Cairo Lumber Company, Inc., Appellant, v. Kate
Ladenberger and Charles M. Corwin, Appellees.

filed November 1, 1941. Rehearing denied February 24, 1942.

LOUIS L. MASON, of Decatur, for appellant.

WILBOURN & TWENTE, of Cairo, for appellee.

MR. JUSTICE DADY delivered the opinion of the court.
The plaintiff, Cairo Lumber Company, a corporation, filed a creditor's suit in the circuit court of Alexander county to set aside certain conveyances of real

estate from defendant Kate Ladenberger to her son and codefendant Charles M. Corwin. The suit was dismissed for want of equity, and plaintiff has taken this appeal.

Kate Ladenberger was indebted to the plaintiff for building materials. To evidence her obligation, she executed two judgment notes payable to the plaintiff, one for $237.70 dated February 1, 1932, due May 1, 1932, and the other for $797.41 dated September 1, 1932, due September 1, 1933. Nothing was ever paid on either of these notes.

At the time these notes were executed the real estate owned by Kate Ladenberger consisted of forty-two lots and two half lots in the city of Cairo, Illinois, and two town lots, improved with seven store buildings, in Sikeston, Missouri.

During 1933 and 1934 all of this real estate was conveyed by Kate Ladenberger, then a widow, to Charles M. Corwin. Forty of the lots, and the two half lots, in the city of Cairo were transferred by three deeds. The first deed was dated February 14, 1933, and recited "love and affection" as the consideration. The other two deeds were dated March 1, 1933, one reciting "One dollar and other consideration," and the other reciting "love and affection," as the respective considerations. All three deeds were recorded on August 4, 1933. The real estate in Sikeston, Missouri, was transferred on August 27, 1934, for a recited consideration of "One Dollar." The remaining two lots in Cairo, valued at $6,000, were conveyed by two deeds dated December 1, 1934, each reciting "One dollar" as the consideration, which deeds were recorded on June 8, 1935.

On September 21, 1939, plaintiff took judgment on the two notes against Kate Ladenberger for $1,551.99. On the same day an execution was issued on the judgment and delivered to the sheriff, who returned it on October 10, 1939, unsatisfied and with the indorsement that he could not find in his county any property of

the defendant subject to levy and sale out of which to make the amount of the execution.

The complaint, filed herein on October 11, 1939, alleged that the transfers of the real estate in Cairo were fraudulent and made without any consideration and for the purpose of hindering and delaying the collection of the plaintiff's notes, and prayed that the transfers be set aside as fraudulent against the plaintiff. By their answers the defendants admitted the making of the transfers but denied that they were fraudulent and made for the purpose of hindering and delaying the plaintiff in the collection of the notes. Their answers further alleged that the transfers of real estate were made for a valuable consideration, and that at the time of and after the making of such conveyances Kate Ladenberger retained real estate of the value of more than $30,000 and personal property of the value of more than $5,000 and was worth over all of her indebtedness more than $30,000 at the time she made the last conveyance to Corwin. Corwin, in addition, set up the defense of laches in his answer. No replication or reply was filed by the plaintiff to the answers of the defendants.

The cause was heard in open court, and the court entered a decree dismissing the complaint for want of equity. The only finding in the decree was that Kate Ladenberger ''retained ample assets to pay her just debts at the time she deeded most of her real estate to her son Charles M. Corwin, and that said deeds were not made in fraud of creditors.''

The first question to determine is whether or not the transfers from Kate Ladenberger to Charles M. Corwin were made for a full and adequate consideration. The trial court made no finding on this question. If the proof discloses that the transfers were voluntary and made without consideration or merely for a nominal consideration, the validity of such transfers as against the plaintiff must be determined by the prin-

ciples set forth in the case of *Birney v. Solomon,* 348 Ill. 410, in which case the court said: "The established rule in this State does not require proof of actual insolvency in order to render a voluntary conveyance void, especially when the conveyance is between husband and wife or parent and child. The true test in determining the validity of a voluntary conveyance as against creditors in such a case is whether or not it directly tended to or did impair the rights of creditors. It is of no moment that the property remaining in the grantor's hands after the conveyance was in nominal value more than equal to the amount of his indebtedness if subsequent events show that the property retained was not sufficient to discharge all his liabilities. . . . The doctrine is firmly declared to be that one must be just before he is generous. What may be in the mind of the grantor when he makes a voluntary conveyance to his wife or child is immaterial, for if it results in hindering, delaying or defrauding creditors it must be regarded as fraudulent. A donor may make a conveyance with the most upright intentions, and yet, if the transfer hinders, delays or defrauds his creditors it may be set aside as fraudulent. . . . Of such force is this rule that where one is found to be insolvent after having made a voluntary conveyance to his wife the burden of dispelling the implication of fraud as against pre-existing creditors is upon his grantee."

Defendants contend that proof of insolvency of the grantor at the time of the conveyances is essential in order to set aside a voluntary conveyance and as authority for this contention cite the case of *State Bank of Clinton v. Barnett,* 250 Ill. 312. Some expressions in that case indicate that such proof is required but we think the correct rule is the one laid down by the more recent case of *Birney v. Solomon* quoted above, wherein it is stated that proof of actual insolvency is not necessary. See *Wright v. Risser,* 290 Ill. App. 576 to the same effect.

Corwin resided alone with his mother at the time of the transfers and had lived with her in her homestead for more than seven years immediately prior thereto. After the transfers they continued to and still do live together. In *Bartel v. Zimmerman*, 293 Ill. 154, it was said: "While a conveyance between parties related to each other by blood or marriage does not, of itself, establish fraud in the transfer, the fact of relationship may properly be considered in connection with other evidence tending to impeach the transaction. . . . Intent to defraud is sometimes implied from the relationship of the parties in connection with other circumstances."

All of the deeds recited either "love and affection" as the consideration or merely a nominal consideration of "One Dollar." Conveyances based on love and affection or on merely a nominal consideration are considered voluntary and without consideration in so far as the rights of pre-existing creditors against the grantors are concerned. (*Oswald v. Nehls*, 233 Ill. 438, 445.)

Kate Ladenberger did not testify. Corwin testified that prior to 1926 he was a traveling salesman earning $200 a month and expenses; that in 1926 after his stepfather died he quit his employment, at the request of his mother, and thereafter lived with her, she then being aged 62 years; that she asked him to take care of her property and agreed to give it to him; that from 1926 on he took care of it, collecting rents and seeing that repairs were made, devoting his full time; and that she never paid him anything for such services until the deeds were made. This is the only testimony relied upon to show that the conveyances were made for a good and valuable consideration. In *Bartel v. Zimmerman, supra,* the court said: ". . . where an immediate member of a family is preferred as a creditor there must be clear and satisfactory proof of a valid and subsisting debt which would be enforced and payment exacted re-

gardless of the fortune or misfortune of the debtor.'' Corwin's testimony uncorroborated is far from clear and satisfactory proof of the existence of a bona fide debt or an agreement to convey the property in question for the claimed services rendered by Corwin. This purported agreement between mother and son rested in parol. No record or memorandum of any kind was made to evidence the same. The evidence shows that the mother, by the transfers, conveyed all of her real estate, including her homestead, within a short period of one year and nine months. This real estate was worth approximately $30,000 and included the property in Sikeston, Missouri, which was later sold by the son for $22,500. The son admitted that the only consideration for the transfer of the Missouri property was ''One Dollar.'' The claim that the services constituted the consideration for the conveyances is not only contradicted by the recitals in the deeds but by the inherent improbability of a person, situated as the mother was in this case, conveying all of her real estate valued at $30,000, including her homestead, without receiving any money, but for a vague and uncertain claim for past services. Such testimony may be disregarded in its entirety when considered in the light of the circumstances surrounding the transactions. (*Hadley v. White,* 367 Ill. 406.) The failure of the mother to testify with reference to the consideration is highly significant since she and her son were the only ones who had full and complete knowledge of the actual consideration, if any, which was given for the transfers. (*McKey v. Cochran,* 262 Ill. 376, 385.) Another circumstance which indicates and throws suspicion upon the transfers was the failure of Corwin to demand a conveyance of the lands between 1926 and 1933, followed by a transfer of most of the Illinois property immediately prior to the maturity of the second note held by the plaintiff. If she had agreed to compensate him

by deeding such real estate to him the ordinary and natural procedure would have been to make all of such transfers at one time, instead of at different times over such period of twenty-one months. These facts lead us to the conclusion that the transfers were not made for a bona fide debt but were merely voluntary, and without a full and adequate consideration.

Since the conveyances were voluntary, it was incumbent on defendants to show that Kate Ladenberger retained ample property after the conveyances to pay the plaintiff's claim. (*Murrie v. Carter,* 222 Ill. App. 447.)

The property retained by the grantor, under the authorities, must be sufficient in fact and readily available for the satisfaction of the creditors. In this connection the following is said in 27 Corpus Juris, at page 552: ''It is essential to the validity of a voluntary conveyance as against existing creditors that the property retained by the donor on making the conveyance is readily available for the satisfaction of their claims by legal process. The law looks to the attainment of practical results, and a solvency which it cannot employ in the payment of the debts of an unwilling debtor is certainly not distinguishable by any valuable difference from insolvency. If the property retained is such that it cannot be sold under execution or attachment, or is located in another state, or is concealed in the names of third persons, or is encumbered so as to necessitate litigation to reach the property, or is such as cannot be reached by creditors without some affirmative action on the part of the debtor himself, it will not avail.'' Defendants contend that the evidence supports the finding of the court that ample property was retained. We cannot agree with this contention. By their verified answers defendants alleged that Kate Ladenberger retained more than $30,000 in real estate, but the uncontradicted testimony of Corwin is that no real estate of

any kind was retained by his mother after the last transfer. At the trial Corwin, contrary to the allegation in the verified answers that she retained personal property of the value of $5,000, testified that after the transfers his mother owned stock of the par value of $25,000 and "maybe $5,000" worth of jewelry and $1,600 on deposit in a closed bank, and "she might have had some money at home but it couldn't have been a very great amount." This is the only property claimed to have been retained by Kate Ladenberger.

The speculative and uncertain character of this property, so retained by the mother, is clearly evident from the evidence. Corwin testified that he did not know the name of the stocks, some being oil stocks and some being railroad stocks; that he did not know in whose name the stock certificates were issued; that he had seen the stocks but didn't know where the stocks were or the number of shares or whether they were listed or unlisted stocks, and did not know the list value of the stocks or the value of the stocks as of June 8, 1935, except what his mother had told him; that the jewelry consisted entirely of diamond rings and he based the value of the jewelry on what it was bought for; that the jewelry was at his home in his desk in his mother's room. Kate Ladenberger failed to testify with reference to the property which she retained.

The president of the plaintiff corporation testified that shortly after the notes became due he called on Mrs. Ladenberger at her home to make some arrangement as to the payment thereof and at that time she cried and said they were not able to meet their bills, were not collecting rents and she did not see how she could do anything toward making any payments. This testimony was not denied and contradicts the claim that Mrs. Ladenberger at that time had any assets to pay the claim of the plaintiff. No show-

ing whatever was made as to the actual value of the stocks retained. The evidence shows that the jewelry was not in possession of the mother but was in the possession of the defendant Corwin. We cannot consider money on deposit in a closed bank as an asset readily available to a creditor.

We think it manifest after a consideration of the evidence that the property claimed to have been retained was wholly insufficient and unavailable for the payment of the plaintiff's claims, and that the conveyances in question tended to and did impair the rights of plaintiff as a creditor of Kate Ladenberger.

Defendant Corwin further contends that the plaintiff was guilty of laches. There is no evidence in the record showing or tending to show that defendants were in any way prejudiced by plaintiff's delay in bringing suit. As stated in *Chicago Medical School v. Wilson,* 341 Ill. 170, ''A court of equity will apply the doctrine of *laches* in denial of relief only where, from all the circumstances, to grant the relief to which the complainant would otherwise be entitled will presumptively be inequitable and unjust because of the delay. . . . The defense of *laches* can be considered only when by delay and neglect to assert a right the adverse party is lulled into doing that which he would not have done or into omitting to do that which he would have done in reference to the property involved had the right been properly asserted.'' In *Totten v. Totten,* 294 Ill. 70, at page 88, the court said ''A court of equity will be slow to apply the doctrine of laches when there is no change in the situation of the parties since the execution of the instrument in question.'' No change in the situation of the defendant Corwin or his mother is shown. No rights of third parties have intervened. No claim is made that Corwin made valuable improvements or otherwise changed his position with reference to the real estate, thereby making it inequitable for the

court to enforce the plaintiff's claim at this time. So far as the record shows Corwin in no way has been prejudiced by the delay and apparently his situation was exactly the same when the litigation was instituted as it was at the time the transfers were made. Under the circumstances presented the doctrine of laches cannot be invoked against the plaintiff.

Finally, defendants contend that because plaintiff failed to file a replication to the answers, the plaintiff admits the defense of laches and the allegation contained in the answers that Kate Ladenberger did retain ample property after the transfers to pay her creditors. In support of such contention the case of *Watt v. Cecil,* 368 Ill. 510 is cited. In the *Watt v. Cecil* case no testimony was heard on the issue in question, whereas in the case at bar the parties took testimony on the issues with reference to laches and on the question of retention of assets by the mother. Under such circumstances, the filing of a replication was waived. (*Ford Motor Co. v. National Bond & Investment Co.,* 294 Ill. App. 585.)

The court erred in dismissing the complaint for want of equity and should have entered a decree granting the relief prayed for in the complaint.

The decree of the trial court is therefore reversed and the cause is remanded to that court with directions to enter a decree in favor of the plaintiff as prayed in the complaint.

*Reversed and remanded with directions.*