NATIONAL CAN CORPORATION, Appellee and Cross-Appellant, v. THE INDUSTRIAL COMMISSION *et al.* (Lois Kinzel, Widow of Lawrence Kinzel, Appellant and Cross-Appellee).

First District (Industrial Commission Division)   No. 1—84—3024WC

Opinion filed August 27, 1986.—Rehearing denied November 25, 1986.

John Thomas Moran and Jay M. Shapiro, of Ganon, Shapiro & Smith, both of Chicago, for appellant.

Wiedner & McAuliffe, of Chicago, for appellee.

JUSTICE KASSERMAN delivered the opinion of the court:

Petitioner, Lois Kinzel, as the widow of Lawrence Kinzel, made an application for adjustment of claim under section 7 of the Workers' Compensation Act (Ill. Rev. Stat. 1981, ch. 48, par. 138.8) for survivor accidental death benefits resulting from the death of her husband, which allegedly occurred while in the course of his employment with National Can Corporation (National Can).

This appeal requires an interpretation of section 4(i) of the Workers' Compensation Act (Ill. Rev. Stat. 1983, ch. 48, par. 138.4(i).) Section 4(i) is one of a series of amendments to the Act contained in Public Act 81—1482, which became effective on September 15, 1980. It provides:

> "(i) If an employer elects to obtain a life insurance policy on his employees, he may also elect to apply such benefits in satisfaction of all or a portion of the death benefits payable under this Act, in which case, the employer's compensation premium shall be reduced accordingly." (Ill. Rev. Stat. 1983, ch. 48, par. 138.4(i).)

Specifically, we are asked to determine whether National Can, pursuant to section 4(i), may apply the proceeds of two group life insurance policies on the life of Lawrence Kinzel in satisfaction of a portion of the death benefits payable to his widow under section 7 of the Act.

The evidence introduced at the hearing before the arbitrator is not in dispute. Lois Kinzel and Lawrence Kinzel were married in

Green Bay, Wisconsin, on August 9, 1947. On December 9, 1980, Mr. Kinzel died in an automobile accident while in the course of his employment with National Can in Madrid, Spain. At the time of his death, Mr. and Mrs. Kinzel were the parents of five adult children.

As a part of Mr. Kinzel's employment benefit package, National Can provided him with two group life insurance policies, one of which was issued by the Equitable Life Assurance Society of the United States (Equitable) and the other by the Life Insurance Company of North America (INA). Mrs. Kinzel testified that she had received proceeds of $114,134.22 as the beneficiary of the Equitable policy and $100,000 as the beneficiary of the INA policy.

The parties stipulated at the hearing before the arbitrator that National Can first informed Mrs. Kinzel of its intention to elect the section 4(i) credit at some point after Mr. Kinzel's death on December 9, 1980.

The arbitrator awarded Mrs. Kinzel burial expenses under section 7(f) of the Act (Ill. Rev. Stat. 1981, ch. 48, par. 138.7(f)) and death benefits in the amount of $358.95 per week under section 7(a) (Ill. Rev. Stat. 1981, ch. 48, par. 138.7(a)). The order of the arbitrator provided that (1) National Can pay the weekly sum to Mrs. Kinzel until the "sum of $250,000.00 has been paid or until the period of 20 years has passed whichever is greater," (2) the payments of death benefits shall cease upon Mrs. Kinzel's death, and (3) Mrs. Kinzel would receive a lump-sum amount equal to two years of her weekly compensation benefits if she were to remarry.

The arbitrator further determined that, under the provisions of section 4(i), National Can could not apply the proceeds of either the Equitable or INA group life insurance policies in satisfaction of a portion of the death benefits payable under the Act.

With one commissioner dissenting, the Industrial Commission affirmed the decision of the arbitrator. Specifically, the Industrial Commission concluded that National Can was not entitled to a section 4(i) credit because National Can failed to advise Mr. Kinzel prior to his death that it might elect to seek such a credit and the Equitable and INA policies "were silent as to any election under section 4(i)." In addition, the Industrial Commission determined that section 4(i) should not be applied to life insurance contracts in existence on September 15, 1980, when section 4(i) became effective because the language of that section was prospective in nature. Furthermore, the Industrial Commission concluded that the following language contained in paragraph E of the "Additional Provisions" portion of the INA policy indicated that National Can did not intend to elect a section 4(i) credit:

"E. Not in lieu of Workmen's Compensation: This policy is not in lieu of and does not affect any requirement for coverage by Workmen's Compensation Insurance."

On review, the circuit court of Cook County confirmed the decision of the Industrial Commission in part and reversed it in part. In accordance with the Industrial Commission decision, the circuit court determined that National Can was not entitled to apply the proceeds of the INA policy in partial satisfaction of the death benefits payable under the Act due to the language in paragraph E of that policy. However, the circuit court adopted the rationale of the dissenting member of the Industrial Commission and concluded that National Can was entitled to offset against the amount of death benefits payable to Mrs. Kinzel the amount of proceeds which Mrs. Kinzel received from the Equitable policy. Mrs. Kinzel has appealed from this judgment and National Can has cross-appealed.

Mrs. Kinzel argues on appeal that the circuit court erroneously interpreted the provisions of section 4(i). Specifically, Mrs. Kinzel urges that the circuit court erred in (1) retroactively applying section 4(i) to insurance policies which were "obtained" prior to the effective date of section 4(i), and (2) allowing National Can to apply the proceeds of the Equitable policy in partial satisfaction of the death benefits awarded to her where National Can did not give notice of its intention to seek such a section 4(i) credit prior to Mr. Kinzel's death. We first address Mrs. Kinzel's assertion that section 4(i) may not be applied retroactively.

■■ It is well settled that the question of whether a statute operates retroactively, or has prospective effect only, is primarily one of legislative intent. (*Champaign County Nursing Home v. Petry Roofing, Inc.* (1983), 117 Ill. App. 3d 76, 78, 452 N.E.2d 847, 849.) Moreover, retroactive legislation is not favored and courts will presume that the legislature intended a provision to operate prospectively only unless a contrary intent is expressed or clearly implied by the language of the provision or the circumstances surrounding its enactment. *Brucato v. Edgar* (1984), 128 Ill. App. 3d 260, 271, 470 N.E.2d 615, 623.

■ Here, Public Act 81—1482 added section 4(i) to the Act on September 15, 1980. There is nothing in the legislative history of Public Act 81—1482 which indicates that the legislature intended that employers could apply the proceeds of insurance policies which they had obtained prior to its effective date in partial satisfaction of death benefits awarded under the Act. In fact, the express language of the statute evinces the legislature's intent that section 4(i) should apply only

to insurance contracts "obtained" after the effective date of the statute. Specifically, section 4(i) states that an employer may elect to apply the benefits of a life insurance policy in partial satisfaction of a statutory death benefit award "if an employer elects to obtain a life insurance policy on his employees." It is our conclusion that this language indicates that employers may elect to apply life insurance proceeds in partial satisfaction of a statutory death benefit award only if the employer procures the life insurance policy after the effective date of section 4(i).

■■ In addition, the determination of whether a particular statute should be applied retroactively must be decided on the basis of whether basic concepts of justice, fairness and equity militate for or against the retroactive application of the statute to a particular class of persons. (*Champaign County Nursing Home v. Petry Roofing, Inc.* (1983), 117 Ill. App. 3d 76, 79, 452 N.E.2d 847, 850.) In applying these fundamental concepts in order to determine whether a particular statute should be retroactively applied to a given class of individuals, the most important inquiry is whether retroactive application gives effect to, or defeats, the good-faith expectations of the members of the class; the competing interests of the affected persons must be carefully weighed in order to arrive at a just result. *Champaign County Nursing Home v. Petry Roofing, Inc.* (1983), 117 Ill. App. 3d 76, 79-80, 452 N.E.2d 847, 850.

The record in the case at bar establishes that prior to the enactment of section 4(i), the decedent was induced to expect that if he died in the course of his employment, his survivors would be entitled to death benefits under the Act and also to the proceeds of any group life insurance policy maintained on their behalf. A retroactive application of section 4(i) to insurance policies obtained prior to September 15, 1980, would defeat the good-faith expectations of the decedent and other such employees. On the other hand, employers who obtained group life insurance policies for their employees' benefit prior to the passage of section 4(i) were aware that the survivors of employees who died in the course of their employment would be paid both the workers' compensation death benefits and the proceeds of such group life insurance policies. Under these circumstances, the good-faith expectations of the employees and the employers alike are identical. Both could expect only that both statutory death benefits and the proceeds of group life insurance policies would be paid to the individuals entitled thereto.

Based on the foregoing analysis, we conclude that section 4(i) has only prospective effect. In other words, section 4(i) applies only to

those group life insurance policies "obtained" by employers after September 15, 1980. Accordingly, we must determine whether National Can obtained the Equitable and INA policies in question after September 15, 1980.

■ The evidence introduced at the hearing before the arbitrator indicates that on July 31, 1975, National Can originally procured an INA group life insurance policy which provided coverage for a period of three years. On July 31, 1978, National Can and INA agreed to extend that policy for another three-year period. This evidence establishes that National Can must be considered as having obtained the INA group life insurance prior to September 15, 1980. Accordingly, section 4(i) does not apply to the INA policy and National Can is not entitled to apply the proceeds of that policy in partial satisfaction of the death benefits awarded to Mrs. Kinzel.

The issue of whether the Equitable group life insurance policy was obtained prior to September 15, 1980, is made more difficult due to the fact that conflicting dates are contained in that policy. For example, the policy, a copy of which was introduced at the hearing before the arbitrator, states in part:

> "This policy shall take effect on the first day of December 1979. The first policy anniversary shall be deemed to be the first day of May 1980 and subsequent policy anniversaries shall be the first day of May of each year thereafter.
>
> * * *
>
> This policy is executed at the Home Office of the Society in New York on its date of issue, the second day of December 1980."

■ We recognize that parties to an insurance contract are competent to fix the date when the contract shall become effective and when it appears that the parties themselves have clearly agreed upon a date upon which the policy shall take effect, any ambiguity is removed and the date agreed upon is binding. (*Lentin v. Continental Assurance Co.* (1952), 412 Ill. 158, 163, 105 N.E.2d 735, 737; see also *Reynolds v. Guarantee Reserve Life Insurance Co.* (1976), 44 Ill. App. 3d 764, 767-68, 358 N.E.2d 940, 943.) In addition, a policy may by agreement be antedated and take effect from that date. (9 Couch on Insurance 2d, sec. 39:67, at 548 (Rev. ed. 1985).) Moreover, an insurance contract, in case of ambiguity, should be liberally construed to effect the intention of the parties and the purpose for which the contract was made. *Bronson v. Washington National Insurance Co.* (1965), 59 Ill. App. 3d 253, 257, 207 N.E.2d 172, 174.

■ Here, although the Equitable home office did not execute the

policy until December 2, 1980, we conclude that, for purposes of section 4(i), that policy was obtained by National Can on December 1, 1979.

In support of this conclusion, we note that the Equitable policy expressly states that it is effective on December 1, 1979. In addition, the Equitable group life insurance policy in question replaced certain Equitable group life insurance policies which were canceled. This policy indicates that the parties intended that National Can employees would be insured under the replaced policies through November 30, 1979, and insured under the Equitable policy in question on and after December 1, 1979. For example, the Equitable policy states in part:

"(1) The requirement that the employee be at work on the day on which the employee becomes eligible and on the day on which the employee becomes insured will not apply on December 1, 1979, to any employee insured on November 30, 1979, under the replaced policies, and

(2) The requirement that a dependent not be confined to a hospital by reason other than the birth of the dependent therein on the day on which the dependent becomes eligible and on the day on which the dependent becomes insured shall not apply on December 1, 1979, to any dependent insured on November 30, 1979, under the replaced policies."

The foregoing language indicates that the purpose of the Equitable group life insurance policy in question was to provide life insurance coverage to National Can employees commencing on December 1, 1979.

In summary, we conclude that National Can was not entitled to apply the proceeds of either the Equitable or the INA policies in partial satisfaction of the death benefits awarded to Mrs. Kinzel. Section 4(i) applies only to insurance policies obtained after September 15, 1980, and National Can obtained both the policies in question prior to that date. Accordingly we need not address the other issues raised by the parties on appeal. Specifically, we need not determine whether, as Mrs. Kinzel submits, a section 4(i) election is valid only if the employer has given notice of his intention to make such an election prior to the employee's death. In addition, we need not address whether, as National Can asserts in its cross-appeal, the circuit court misconstrued a certain provision of the INA policy.

For the foregoing reasons, we affirm that portion of the judgment of the circuit court of Cook County determining that National Can was not entitled to apply the proceeds of the INA life insurance policy on the life of its employee, Lawrence Kinzel, in partial satisfaction of

death benefits payable under the Workers' Compensation Act. Furthermore, we reverse the judgment of the circuit court that National Can is entitled to apply the proceeds of the Equitable life insurance policy on Mr. Kinzel's life in partial payment of death benefits under such act.

Affirmed in part and reversed in part.

WEBBER, P.J., and BARRY, LINDBERG, and McNAMARA, JJ., concur.