LEONARD CANNON *et al.*, Plaintiffs-Appellees, v. WHITMAN CORPO-
RATION, Defendant-Appellant (Illinois Central Railroad Company, Defend-
ant).

Fifth District   No. 5—89—0062

Opinion filed March 27, 1991.—Rehearing denied April 25, 1991.

80

John P. Scotellaro, John W. Rotunno, and Carol A. Genis, all of Bell, Boyd & Lloyd, of Chicago, and William A. Schmitt, of Thompson & Mitchell, of Belleville, for appellant.

Steven M. Wallace, of Carr, Korein, Tillery, Kunin & Montroy, of East St. Louis, and Jerome J. Schlichter, of Schlichter Law Associates, of Fairview Heights, for appellees.

JUSTICE HOWERTON delivered the opinion of the court:

Whitman Corporation appeals the issuance of a mandatory preliminary injunction by which the circuit court ordered Whitman to post an $18 million guarantee of a judgment plaintiffs had obtained in Federal court against Illinois Central Railroad Company—a judgment which had not yet been reduced to a definite amount. We affirm.

Plaintiffs are members of a class that sued the Illinois Central Railroad Company in Federal court in 1981. (*Mister v. Illinois Central Gulf R.R. Co.* (1987), 832 F.2d 1427.) In that action, plaintiffs alleged that the railroad had violated Federal civil rights laws by racially discriminating in hiring workers; the District Court for the Southern District of Illinois found for the railroad and against the class. The Seventh Circuit Court of Appeals, however, reversed and

found the railroad liable, saying, "[i]t is hard to imagine a stronger case short of an announcement of discrimination." The case was remanded to the district court for determination of damages to be awarded upon the finding of liability entered by the court of appeals. Plaintiffs claimed damages in the sum of $18 million and have moved to increase the addendum to $450 million.

Whitman Corporation, the appellant in the case at bar, is not a party to the Federal case. The railroad was a wholly owned subsidiary of Whitman. After the Federal case was remanded for determination of damages, however, three things happened: (1) the railroad, for the first time in 10 years, declared and paid to Whitman a dividend of $150.8 million; (2) the railroad transferred to Whitman $381.6 million of tax benefits it had coming; and (3) Whitman spun-off the railroad.

In the spin-off, Whitman would deliver all of the outstanding shares of common stock of the railroad to another wholly owned subsidiary, the Illinois Central Transportation Company. Shares of Illinois Central Transportation Company would be distributed to the shareholders of Whitman, one share of Illinois Central Transportation Company stock for five shares of Whitman stock. As a result of the spin-off, Whitman no longer would own stock in either the railroad or Illinois Central Transportation Company. Instead, Whitman's shareholders would own all of the outstanding stock of Illinois Central Transportation Company which, in turn, would own the railroad.

Plaintiffs sued Whitman in St. Clair County circuit court to enjoin the proposed spin-off as fraudulent to creditors pursuant to "An Act to revise the law in relation to frauds and perjuries" (Act) (Ill. Rev. Stat. 1987, ch. 59, par. 4) and to set aside the dividend and the transfer of the tax benefits. The circuit court refused to enjoin the spin-off, and refused to set aside both the dividend and the transfer of tax benefits. Instead, the circuit court found that the question of insufficiency of property to pay indebtedness under the Act raised sufficient questions of law and fact to justify ordering Whitman to execute and file an $18 million guarantee for the benefit of the plaintiffs to the extent that the railroad is unable to pay that judgment. Whitman appeals from this order.

■■ The circuit court has the discretion to issue or to deny a preliminary injunction, and the exercise of that discretion will not be disturbed on appeal absent an abuse of that discretion. (*Jefco Laboratories, Inc. v. Carroo* (1985), 136 Ill. App. 3d 793, 483 N.E.2d 999; *Kessler v. Continental Casualty Co.* (1985), 132 Ill. App. 3d 540, 477 N.E.2d 1287.) Appellate review of the issuance of preliminary injunctions is restricted to determining whether the circuit court properly

82

exercised its broad discretionary powers. *Junkunc v. S.J. Advanced Technology & Manufacturing Corp.* (1986), 149 Ill. App. 3d 114, 498 N.E.2d 1179; *Rao v. St. Elizabeth's Hospital of the Hospital Sisters of the Third Order of St. Francis* (1986), 140 Ill. App. 3d 442, 488 N.E.2d 685.

Two questions must be answered before we can determine whether the circuit court abused its discretion: (1) whether there was sufficient evidence presented from which the circuit court could find that the proposed spin-off might constitute a fraudulent conveyance; and (2) whether the circuit court had the power to order Whitman to post the guarantee.

As to the first question, we are not to determine in this review of the issuance of a preliminary injunction whether the spin-off would constitute a fraudulent conveyance; instead, our review is limited to whether the circuit court's finding that such a likelihood exists is against the manifest weight of the evidence.

■ The Illinois Supreme Court, in *Gendron v. Chicago & North Western Transportation Co.* (1990), 139 Ill. 2d 422, 564 N.E.2d 1207, set out the test to be used in determining whether a challenged conveyance is fraudulent.

"Illinois recognizes two categories of fraudulent conveyances: those which are fraudulent in fact and those which are fraudulent in law. [Citations.] In fraud-in-fact cases a specific intent to 'disturb, delay, hinder or defraud' must be proved. [Citations.] In fraud-in-law cases, on the other hand, a conveyance may be presumed fraudulent based on certain circumstances surrounding the conveyance [citation], and intent is immaterial [citation]. In order to establish that a conveyance is fraudulent in law, three elements must be present: (1) there must be a transfer made for no or inadequate consideration; (2) there must be existing or contemplated indebtedness against the transferor; and (3) it must appear that the transferor did not retain sufficient property to pay his indebtedness." *Gendron*, 139 Ill. 2d at 437-38, 564 N.E.2d at 1214.

Certain circumstances are so commonly associated with fraud that they have earned the title "badges of fraud" and when present in sufficient number, a *prima facia* case of fraud may be made. Among these are: (1) an existing indebtedness and pending litigation at the time the funds were transferred; (2) transfer of funds between family members; and (3) conversion of bank deposits into currency. *Kaibab Industries, Inc. v. Family Ready Homes, Inc.* (1978), 80 Ill. App. 3d 782, 372 N.E.2d 139.

■■ In this case, the railroad had a judgment entered against it, and, although the judgment had not been reduced to an amount certain, it is clear that that judgment will be sizeable. In the face of that liability, the railroad bestowed unprecedented financial benefits upon Whitman. Whitman then prepared the disputed spin-off of the railroad to Whitman's own shareholders.

In looking at the three factors, set out in *Kaibab*, it is clear from the manifest weight of the evidence at this stage of the case that the first is present and the other two arguably exist as well. The transfer of money between a parent corporation and its wholly owned subsidiary is akin to a familial transfer. Similarly, when Illinois Central declared a dividend and also transferred the accrued tax benefits to Whitman, the transaction was analogous to converting bank deposits to currency, *i.e.*, turning ledger entries into liquid assets.

Under these circumstances, the circuit court was justified in finding that the plaintiffs had a reasonable likelihood of prevailing on the merits so as to warrant preliminary injunctive relief.

We next turn to whether the circuit court abused its discretion when it ordered Whitman to post the bond. It is undisputed that after a fraudulent conveyance, a creditor can still reach the transferred property. (Ill. Rev. Stat. 1987, ch. 59, par. 4.) The question is whether the creditor must wait until the transfer is complete or whether a creditor may invoke the aid of a court to prevent, what more likely than not, could be a fraudulent conveyance.

Recently, the supreme court has refused to enjoin a proposed sale of a railroad in an action also brought under the Act. (*Gendron v. Chicago & North Western Transportation Co.* (1990), 139 Ill. 2d 422, 564 N.E.2d 1207.) However, that case is distinguishable from the present situation, because in *Gendron* the plaintiffs' claims were based on a collective-bargaining agreement, and thus, the Federal Railway Labor Act preempted application of State law. (45 U.S.C. §§151 to 188 (1982).) Here, the underlying debt arises from a suit for discrimination, a case that is within the unpreempted cognizance of the courts of this State. We feel that this is a claim similar to one for retaliatory discharge, a claim which the supreme court likewise has found not preempted. *Gonzalez v. Prestress Engineering Corp.* (1986), 115 Ill. 2d 1, 503 N.E.2d 308.

Given that fact, we must determine whether a debtor can be enjoined from disposing of assets, and we hold that such an injunction may be obtained for two reasons.

## I

We first note that the Act (Ill. Rev. Stat. 1987, ch. 59, par. 4) has been replaced with the Uniform Fraudulent Transfer Act (Ill. Rev. Stat. 1989, ch. 59, par. 101 *et seq.*). While the old statute did not specifically mention injunctive relief, the current statute expressly provides for an injunction against the disposition of assets or for any other relief that the circumstances may require. (Ill. Rev. Stat. 1989, ch. 59, pars. 108(a)(3)(A), (a)(3)(C).) The old statute, not the new, was in force when this case arose. We examine whether the new statute is retroactive so as to cover this case.

■ At the outset, we note that the question whether a statute should be applied retroactively is decided on the basis of whether justice, fairness, and equity require retroactive application to a particular class of persons. (*National Can Corp. v. Industrial Comm'n* (1986), 148 Ill. App. 3d 1079, 500 N.E.2d 437.) In *Farm Credit Bank v. Lynn* (1990), 204 Ill. App. 3d 538, 561 N.E.2d 1355, the first Illinois case to examine the new statute, the court held that the statute can be given retroactive effect in order to enjoin the transfer of property. The court noted that whether a statute should be retroactively applied is primarily a question of legislative intent. (*Farm Credit*, 204 Ill. App. 3d at 540, 561 N.E.2d at 1357, citing *Champaign County Nursing Home v. Petry Roofing, Inc.* (1983), 117 Ill. App. 3d 76, 452 N.E.2d 847.) Here, the legislature's express purpose was to harmonize Illinois law with the laws of other States. *Farm Credit*, 204 Ill. App. 3d at 540, 561 N.E.2d at 1357; Ill. Rev. Stat. 1989, ch. 59, par. 112.

Other States which have enacted the Uniform Act have held that the statute is remedial in nature and thus can be given retroactive effect. (See, *e.g., In re Gherman* (S.D. Fla. 1989), 103 B.R. 326, citing *City of Orlando v. Desjardins* (1986), 493 So. 2d 1027.) We agree that justice would be served by applying this act retroactively.

■ Under the Uniform Fraudulent Transfer Act, the circuit court has the authority to order any relief it feels necessary under the circumstances. (Ill. Rev. Stat. 1989, ch. 59, par. 108(a)(3)(C).) Therefore, the circuit court was completely within its power to order Whitman to post a guarantee pending the determination of damages.

## II

For a second reason, we turn to the common law. The omission of injunctive relief in the old statute did not preclude a party from seeking an injunction under the common law. (*Farm Credit Bank* (1990), 204 Ill. App. 3d 538, 540, 561 N.E.2d 1355, 1357.) Other States have

also held that a creditor can obtain an injunction against the disposition of assets. (See, *e.g.*, *Lipskey v. Voloshen* (1928), 155 Md. 139, 141 A. 402 (judgment creditor granted injunction); *Oliphant v. Moore* (1927), 155 Tenn. 359, 293 S.W. 541 (tort creditor granted injunction restraining alleged tortfeasor's disposition of property).) Accordingly, even under the old statute, the trial court possessed the equitable power to enjoin the spin-off pending a hearing on the merits.

The circuit court, therefore, had the power to enjoin the spin-off. Enjoining the spin-off would have stopped an approximately $1.5 billion transaction dead in its tracks with concomitant tremors in the financial markets, but the circuit court would not have abused its discretion had it entered such an order. Requiring an $18 million guarantee is unquestionably less onerous than what the circuit court could have done. Since the circuit court could have enjoined the spin-off, *a fortiori*, it could require Whitman to post the guarantee, and in this manner protect the judgment creditors, prevent tremors in the financial markets, while still allowing Whitman to conduct its business.

We cannot agree that by taking measured and limited steps to insure that monies are preserved to pay plaintiffs' judgment, the court abused its discretion.

Affirmed.

LEWIS and GOLDENHERSH, JJ., concur.