**UNITED STATES of America, Plaintiff**

v.

**Norman PARADISE, Lilly Paradise, First Chicago/NBD of Highland Park and Citibank, Defendants.**

No. 98–C–5945.

United States District Court,
N.D. Illinois.

Nov. 1, 2000.

952

Bartholemew Cirenza, United States Dept. of Justice, Tax Division, Washington, DC, Craig K. Weaver, U.S. Dept. of Justice, Washington, DC, for plaintiff.

Harvey M. Silets, Katten, Muchin & Zavis, Chicago, IL, for defendants.

LEFKOW, District Judge.

Plaintiff, United States of America ("the United States") filed a two count complaint seeking to set aside a conveyance of real property into a land trust and to foreclose a tax lien against the conveyed property. The Court's jurisdiction rests on 28 U.S.C. § § 1340 (internal revenue) and 1345 (United States as plaintiff). The United States and defendants Norman and Lilly Paradise cross-moved for summary judgment. Defendant Citibank adopts the Paradises' motion. For the reasons stated below, the court grants the motion of the United States.

## SUMMARY JUDGMENT STANDARDS

■ Summary judgment obviates the need for a trial where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). To determine whether any genuine fact exists, the court must pierce the pleadings and assess the proof as presented in depositions, answers to interrogatories, admissions, and affidavits that are part of the record. Fed.R.Civ.P. 56(c) advisory committee's notes. The party seeking summary judgment bears the initial burden of proving there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). In response, the non-moving party cannot rest on bare pleadings alone but must use the evidentiary tools listed above to designate specific material facts showing that there is a genuine issue for trial. *Id.*, 477 U.S. at 324, 106 S.Ct. at 2553; *Insolia v. Philip Morris Inc.*, 216 F.3d 596, 598 (7th Cir.2000). A material fact must be outcome determinative under the governing law. *Insolia*, 216 F.3d at 598–599. Although a bare contention that an issue of fact exists is insufficient to create a factual dispute, *Bellaver v. Quanex Corp.*, 200 F.3d 485, 492 (7th Cir.2000), the court must construe all facts in a light most favorable to the non-moving party as well as view all reasonable inferences in that party's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 2513, 91 L.Ed.2d 202 (1986).

## FACTS STATED IN A LIGHT MOST FAVORABLE TO DEFENDANTS

On January 15, 1975, defendant Lilly Paradise became the sole beneficiary of Land Trust No. 1811. On that same day, Norman and Lilly Paradise transferred into Land Trust 1811 title to real property they had previously purchased on June 20,

1974 (the "subject property").[1] On March 20, 1978, a Secretary of the Treasury delegate made two penalty assessments pertaining to unpaid withheld employment tax liabilities of two corporations, Northbrook Clinic and X–Ray Lab, Inc. and Medical Health Test Centers, Inc. The Northbrook Clinic assessment totaled $14,323.79 and reflected three periods ending June 30, 1974, March 31, 1975, and June 30, 1975. The Medical Health Test Centers assessment totaled $8,334.10 and reflected three periods ending March 31, 1974, March 31, 1975, and June 20, 1975. At the time Norman and Lilly transferred the property into the land trust, Norman's outstanding tax liability to the United States was $14,679.42. Norman asserts that "[o]n or about January 15, 1975, immediately after the transfer, ... [he] owned approximately $20,000.00 worth of assets, including: household furnishings, car, jewelry and combined checking and savings accounts, in addition to his monthly salary." (Defs.' Statement of Undisputed Facts, ¶ 14.) In addition, Norman testified at his deposition that he could not remember how much his salary was at the time the property was transferred and that his debt was "[s]omewhere around $2,000." (Defs.' Ex. C, at 21 and 33.) In his answer to the United States' interrogatories, Norman stated that as of January 14, 1975, the day before the transfer, his assets "included the [subject] property," "personal assets totaling approximately $20,000," and he possessed "personal debts to department stores and credit cards of under $1,000." (Defs.' Ex. E, at 3–4.)

On August 11, 1982, the United States District Court for the Northern District of Illinois entered a $22,657.89 judgment plus interest against Norman for unpaid withheld employment taxes pursuant to 26 U.S.C. § 6672.[2] The district court reduced this judgment to $19,925.94 plus interest on October 28, 1982. On September 6, 1984, the United States Bankruptcy Court for the Northern District of Illinois entered a discharge in Norman's Chapter 7 bankruptcy case.

## DISCUSSION

■ Although repealed in 1990 and replaced by the Illinois Uniform Fraudulent Transfer Act, 740 ILCS 16% et seq. (the "UFTA"), the governing law at the time the defendants transferred the subject property into a land trust stated that "[e]very gift, grant, conveyance, assignment or transfer of ... any estate, real or personal,... made with the intent to disturb, delay, hinder or defraud creditors or other persons ... shall be void as against such creditors, purchasers and other persons." Ill.Rev.Stat. ch. 59, ¶ 4 (repealed 1990).[3]

1. The Paradises had purchased the subject property for $68,000 by paying $31,000 at closing and financing the remaining $37,000 pursuant to a note and mortgage also dated June 20, 1974. A Notice of Mortgage Release, Satisfaction and Discharge evidencing full satisfaction of the June 20, 1974 mortgage was filed on May 3, 1994. There is no evidence that the subject property was encumbered again until January 17, 1995, two days after the transfer, when Land Trust No. 1811's trustee mortgaged the property to secure a $49,900 credit agreement.

2. Section 6672 of Title 26 of the United States Code states as follows:

   (a) **General rule.**—Any person required to collect, truthfully account for, and pay over any tax imposed by this title who willfully fails to collect such tax, or willfully attempts in any manner to evade or defeat any such tax or the payment thereof, shall, in addition to other penalties provided by law, be liable to a penalty equal to the total amount of the tax evaded, or not collected, or not accounted for and paid over....

3. The Paradises claim that the UFTA applies retroactively to this case but state that the result is the same under either the current or prior statute. Although *Cannon v. Whitman Corp.*, cited by the defendants in support, affirmed application of the UFTA retroactively to issue an injunction in that case (relief not available under the repealed statute), it did not hold that the UFTA should be applied to all pre–1990 transfers. 212 Ill. App.3d 79, 155 Ill.Dec. 503, 569 N.E.2d 1114(*1991*). In addition, both Illinois courts and the Seventh Circuit, in cases decided after *Cannon*, have applied the repealed statute to determine whether pre–1990 transfers were fraudulent

Two categories of fraud exist regarding fraudulent conveyances under Illinois law: (1) fraud in fact, requiring proof of actual intent; and (2) fraud in law, where fraudulent intent is presumed when creditors' rights are directly impaired and the transfer is made for no or inadequate consideration. *See Klingman*, 114 F.3d at 626; *Casey*, 282 Ill.App.3d at 59, 218 Ill.Dec. at 127, 668 N.E.2d at 611. The United States' motion argues that the subject property's conveyance into the land trust qualifies as both types of fraud, and the Paradises claim that summary judgment is appropriate in their favor because the conveyance does not fall within either type as a matter of law. In addition, the parties argue over whether the Paradises' four affirmative defenses have any merit.

■ "Fraud in law requires proof of (1) a voluntary transfer for inadequate consideration, (2) an existing indebtedness against the donor, and (3) retention by the donor of insufficient property to satisfy the indebtedness." *Casey*, 282 Ill.App.3d at 59, 218 Ill.Dec. at 127, 668 N.E.2d at 611. The Paradises do not dispute in either their own motion or their response to the United States' motion that the first ele-

ment of fraud in law has been satisfied. Both Norman and Lilly testified at their depositions that no money was paid for the transfer. In addition, the only consideration alleged to have been paid for the conveyance was the "shared responsibility for the outstanding mortgage," Defs.' R. 56.1(a)(3), but the Paradises offer no evidence in support of this allegation and Norman stated at his deposition that he remained responsible for making the mortgage payments after the transfer. Hence, the court finds that Norman and Lilly's conveyance of the subject property into the land trust for Lilly's benefit was made for inadequate consideration.

■ The court also finds that Norman possessed an existing indebtedness at the time of the transfer. As stated above, the parties do not dispute that the 1982 district court judgment found Norman liable for unpaid withheld employment taxes with regard to two corporations for periods ending prior to the conveyance date. The Paradises also do not dispute the existence of this indebtedness at the time of the transfer. Therefore, the United States has satisfied element two.[4]

under Illinois law. *See Klingman v. Levinson*, 114 F.3d 620, 626 (7th Cir.1997); *Casey Nat'l Bank v. Roan*, 282 Ill.App.3d 55, 218 Ill.Dec. 124, 668 N.E.2d 608 (1996). As the Paradises admit that applying the UFTA will make no difference to the outcome of this case and case law suggests that application of the repealed statute is appropriate, this court will not address whether to apply the UFTA retroactively to this case. The court notes, however, that under the UFTA the same three elements required to prove fraud in law under pre-UFTA law continue to exist. *See* 740 ILCS 16%(a); *General Elec. Capital Corp. v. Lease Resolution Corp.*, 128 F.3d 1074, 1078 (7th Cir.1997). As explained below, there is no genuine issue of fact regarding the fraud in law elements. It appears, therefore, that the Paradises correctly assert that applying the UFTA would lead to the same result as under the repealed statute. *Cf. Scholes v. Lehmann*, 56 F.3d 750 (7th Cir.1995) (deciding case under old law but noting that UFTA would lead to the same result).

4. Although the Paradises do not dispute that part of the debt comprising the 1982 judg-

ments arose prior to the transfer, they argue in their supporting memorandum that the United States may not collect "for the liability incurred after January 15, 1975 from any proceeds of the property in question." (Defs.' Mem. in Supp. at 9.) The court rejects the Paradises' argument. While the United States could not have attempted to set aside the conveyance unless Norman owed it a pre-transfer debt, it does not follow that all potential proceeds are immune for post-transfer lien attachment. *Grigsby v. Carmell (In re Apex Automotive Warehouse)*, 1998 WL 134226, No. 96 A 1618 (Bankr.N.D.Ill.1998), cited in support by the Paradises, only stands for the proposition that creditors seeking to set aside transfers under UFTA § 6(a) must possess a pre-transfer claim. The case does not address what occurs to excess proceeds after a conveyance is undone by a creditor and levied upon to satisfy a pre-transfer claim.

The 1982 judgment against Norman established that Norman is liable to the United States for both pre and post-transfer tax claims. "If any person liable to pay any tax

With regard to the third element, whether Norman retained sufficient property to satisfy the indebtedness, "[t]he established rule in ... [Illinois] does not require proof of actual insolvency in order to render a voluntary conveyance void, especially when the conveyance is between husband and wife or parent and child." *Birney v. Solomon*, 348 Ill. 410, 414, 181 N.E. 318, 320 (1932). *See also Cairo Lumber Co. v. Ladenberger*, 313 Ill.App. 1, 39 N.E.2d 596, 598 (1942). Under Illinois law, "[t]he true test ... in such a case is whether or not ... [the conveyance] directly tended to or did impair the rights of creditors." *Birney*, 348 Ill. at 414, 181 N.E. 318. *See also Flynn v. O'Dell*, 281 F.2d 810, 816 (7th Cir.1960); *Cairo Lumber*, 39 N.E.2d at 598. Norman stated both at his deposition and when answering the United States' interrogatories that he had a total of $20,000 in assets after the transfer and that he owed between $1,000 and $2,000 at the time of the conveyance. Noting the Paradises' lack of substantiation for their testimony that after the conveyance they had $20,000 in assets and the indisputable fact that Norman did not pay the outstanding liability, the United States doubts the veracity of Norman's testimony concerning his net worth. Nevertheless, it can offer no other evidence of Norman's personal worth at the time, so for purposes of this motion the testimony is taken as true. This lack of any substantiation of Norman's financial condition in 1975 suggests there is a genuine issue of material fact, particularly where, as demonstrated below, the assets approximately equaled the liabilities at the relevant time. A trial, however, will not elucidate the question because both sides agree that this is all the evidence that exists and both seek summary judgment.

The court must examine the debtor's solvency from the creditor's perspective to determine "what assets are available through various legal processes for payment of the debts." *Bay State Milling Co. v. Martin*, 145 B.R. 933, 947 (Bkrtcy.N.D.Ill.1992). "The law looks to the attainment of practical results, and a solvency which it cannot employ in the payment of the debts of an unwilling debtor is certainly not distinguishable by any valuable difference from an insolvency." *Cairo Lumber*, 39 N.E.2d at 600. If at the time of the conveyance Norman's assets were worth $20,000, and if it is assumed that Norman's debt was as much as $2,000 and that Lilly had no claim to any of the property identified as "household furnishings, car, jewelry and combined checking and savings accounts," Norman would have had $20,000 at the time of the transfer to pay his total debt of $16,679.42 if he voluntarily paid.[5] Although perhaps Norman could have satisfied this debt after the transfer, as a practical matter, if the United States were to have invoked legal process, Norman would have had an exemption under Illinois law of $1,000 [6] and additional debt would have

---

neglects or refuses to pay the same after demand, the amount ... shall be a lien in favor of the United States upon all property and rights to property, whether real or personal, belonging to such person." 26 U.S.C. § 6321. This lien continues "until the liability for the amount so assessed (or a judgment against the taxpayer arising out of such liability) is satisfied or becomes unenforceable by reason of lapse of time." 26 U.S.C. § 6322. "If a timely proceeding in court for the collection of a tax is commenced, the period during which such tax may be collected by levy shall be extended and shall not expire until the liability for the tax (or a judgment against the taxpayer arising from such liability) is satisfied or becomes unenforceable." 26 U.S.C.

§ 6502. Because the United States obtained a judgment for the post-transfer liability, therefore, the lien remains enforceable and has not lapsed. Hence, any excess proceeds existing after sale of the property and application of the sale proceeds to satisfy costs of sale, the existing mortgage lien, Lilly's one half interest, and the pre-transfer claim will be subject to the post-transfer indebtedness.

5. Norman's salary is of no consequence since Norman cannot recall how much he made at the time of the transfer.

6. In a forced liquidation situation, the United States' could only satisfy the judgment from non-exempt assets. In 1975, Illinois law ex-

been incurred because of enforcement penalties, as the final assessment reflects. There is no indication, moreover, that the Paradises' asset value approximation takes into consideration either the liquidation costs or liquidation value of either a voluntary or a forced liquidation. Apt comparison can be made with *Birney v. Solomon.* There the defendant's debt was $11,846.77 (the judgment amount), his net worth after the transfer was $17,091.90, and he was in a declining financial condition which ended in bankruptcy. While the defendant was literally solvent immediately after the transfer, the court found that the rights of creditors were impaired and held the conveyance fraudulent. Although not identical, the court is satisfied that this case is sufficiently similar to *Birney* to point to the same result. Because the evidence demonstrates that Norman transferred his largest asset after the claims arose and that after transfer he was either insolvent or on the brink-indeed, he would have had to liquidate all he had in order to pay—the court concludes that the United States has shown that the transfer impaired or tended to impair the United States' rights. As such, the United States has proven all three elements of fraud in law, and there is no need to address the United States fraud in fact argument.

The Court also finds that the Paradises four affirmative defenses do not foreclose summary judgment in the United States favor. First, the Paradises argue that this action is barred by laches. The Court rejects this defense, as the Seventh Circuit has found that laches is no defense to fraud. *See King v. Ionization Int'l, Inc.,* 825 F.2d 1180, 1187 (7th Cir.1987). Second, the Paradises argue that this action is barred by the Illinois limitations period. "Federal courts," however, "have repeatedly held that federal law, not state law, controls the time within which the government must bring suit to set aside an allegedly fraudulent conveyance in the course of efforts to collect federal taxes." *United States v. Cody,* 961 F.Supp. 220, 221 (S.D.Ind.1997) (collecting cases). Under the applicable federal statute, 26 U.S.C. § 6502, there is no bar to this action, as the United States reduced the assessment to a judgment in 1982 and that judgment remains enforceable by levy until satisfied. This court also rejects the Paradises' third affirmative defense that Norman had no legal or equitable interest in the property at the time the liabilities arose. Norman transferred the property after the corporations failed to pay withheld unemployment taxes—a failure for which Norman was found liable. In addition, this defense is subsumed by the entire fraudulent conveyance question. Even if the court accepted the argument that property transferred before an assessment is not subject to a tax lien, the Paradises admit that "property transferred prior to an assessment ... [is] subject to seizure in satisfaction of the assessment[ ] if the United States can demonstrate the conveyance was fraudulent." (Defs. Resp. at 12.)[7] The Paradises fourth affirmative defense, that Norman's Chapter 7 bankruptcy extinguished the tax liability because the liability had been reduced to judgment prior to Norman's discharge, is equally meritless. Liability under 26 U.S.C. § 6672 is not dischargeable in bankruptcy regardless of whether the tax debt is reduced to judgment. *See* 11 U.S.C. § § 523(a)(1)(a) & 507(a)(8)(C).

empted $300 worth of property, including money, and salary or wages due him, and, if the debtor was the head of a family, $700 worth of other property. ILL. REV. STAT. ch. 52, § 13 (Smith–Hurd 1975).

**7.** The Paradises cited one case in support of there position that property transferred before an assessment is not subject to a tax lien. The cited case, *Ezell v. United States,* 1989 WL 113541, No. 84–0318 (W.D.Ky. Aug. 16, 1989), contained little analysis, was decided under Kentucky law, and makes no mention of when the tax liabilities leading to the assessments arose.

## CONCLUSION

In conclusion, the court finds that no genuine issue of material fact exists regarding whether the transfer was fraudulent in law, that the Paradises' affirmative defenses do not bar the United States from seeking to set aside the subject conveyance, and that summary judgment is appropriate in the United States' favor. The United States is entitled to foreclose its pre-transfer tax liens against the property and apply the sale proceeds to satisfy, in the following order, the sale costs, existing mortgage lien, Lilly's one half interest in the property, and both its pre-and post-transfer claim.