# In the
# United States Court of Appeals
## For the Seventh Circuit

No. 00-4004

UNITED STATES OF AMERICA,

*Plaintiff-Appellee*,

*v.*

HERBERT AND CAROL ENGH,

*Defendants-Appellants*,

and

MARSTONMOOR TRUST,

*Intervenor-Appellant*.

Appeal from the United States District Court
for the Northern District of Illinois, Western Division.
No. 97 C 50309—**Philip G. Reinhard**, *Judge*.

ARGUED APRIL 10, 2003—DECIDED JUNE 2, 2003

Before BAUER, RIPPLE, and EVANS, *Circuit Judges*.

EVANS, *Circuit Judge*.  The Enghs, Herbert and Carol (along with a trust they created), appeal a finding that they engaged in a fraudulent conveyance 20 years ago. The finding grows out of an action by the government to collect a 1982 federal tax liability by, among other things, foreclosing a lien on property the Enghs passed to a trust "for the benefit of their daughters" in 1983. Because we agree that the conveyance was indeed fraudulent, we re-

ject the Enghs' appeal and affirm the judgment of the district court.

Despite a good paying job as a pilot with American Airlines, Herbert Engh (we need not refer to Carol any more as she is just in this case for the ride) bought into the tax protest movement. In 1982, while disputing an IRS claim that his 1979 tax return included an improper $8,000 deduction, Engh relied on tired—and uniformly rejected—arguments of the tax protester movement, including an assertion that the federal tax on income is unconstitutional. He lost the dispute, paid the deficiency, but then embraced the tax protest movement with greater vigor. In his own words he amassed "a whole library" of books concerning the legality of the income tax. Convinced that the "system" did not apply to him, he stopped filing returns from 1982 through 1987, although his pilot's salary was in the neighborhood of $100,000 a year. In addition, Engh did things like file an IRS Form W-4 with American Airlines claiming to be exempt from income tax withholding. He also stashed all mail received from the IRS in a drawer, unopened.

It was in this climate that Engh created an Illinois land trust which he called "The Marstonmoor Trust" in 1983. The trust instrument came to Engh via George Thiel, a well-known apostle of the tax protest movement. Once created, Engh transferred his interest in his home, which was on a four-parcel tract of land on Marstonmoor Road in Davis, Illinois, to the trust.

Although the government in this suit sought a more sizeable deficiency, the district court settled on $39,049.56 as the amount due on Engh's 1982 federal income tax return. That figure is not challenged on this appeal. It is only the characterization of Engh's transfer of his interest in the Marstonmoor property that we need to con-

sider.[1]

Under Illinois law, which governs in this case, a conveyance is void if it is "made with the intent to disturb, delay, hinder or defraud creditors or other persons." Ill. Rev. Stat. ch. 59, para. 4 (repealed 1990). In 1989 Illinois adopted the Uniform Fraudulent Transfer Act (UFTA), 740 ILCS 160/1, which became effective on January 1, 1990. *Levy v. Markal Sales Corp.*, 724 N.E.2d 1008, 1010 (Ill. App. Ct. 2000). Although the district court analyzed Engh's 1983 property transfer to the trust under the UFTA, whether the UFTA applies retroactively is not clear. *Compare Farm Credit Bank of St. Louis v. Lynn*, 561 N.E.2d 1355, 1357 (Ill. App. Ct. 1990) (finding that UFTA injunctive relief provisions could be granted against pre-enactment fraudulent conveyances); *Cannon v. Whitman Corp.*, 569 N.E.2d 1114, 1117-1118 (Ill. App. Ct. 1991) (same, noting that other states had applied the UFTA retroactively), *with Klingman v. Levinson*, 114 F.3d 620 (7th Cir. 1997) (applying pre-UFTA law to a pre-enactment transfer). We need not decide the UFTA retroactivity issue, however, because the result in this case would be the same under any version of Illinois law. Under both the UFTA and preexisting law, a transfer is fraudulent if the transferor acted with the actual intent to hinder creditors. *Compare* Ill. Rev. Stat. ch. 59, para. 4 (1989) *with* 740 ILCS 160/5(a)(1) (2002). *See United States v. Kitsos*, 770 F. Supp. 1235 n.13 (N.D. Ill. 1991); *In re Sevko, Inc.*, 143 B.R. 167, 173 (Bankr. N.D. Ill. 1992); *United States v. Paradise*, 127 F. Supp. 2d 951, 954 n.3 (N.D. Ill. 2000).

As Arthur Godfrey once said, "I'm proud to be paying taxes in the United States. The only thing is—I could be

---

[1] Although we originally questioned our jurisdiction and thus asked the parties to file memoranda on the point, our review now convinces us that the district court's order was final and that we do have jurisdiction under 28 U.S.C. § 1291.

just as proud for half the money." Few people enjoy paying taxes, and Mr. Engh is certainly in the majority. But most people do not react as he did and suffer the consequences he has suffered. His case is a good example of why taxpayers, even very frustrated taxpayers, should resist the false siren call of the tax protester movement. Engh can win his case today only if the record fails to support the finding of District Judge Reinhard that his 1983 property transfer machinations had nothing to do with playing a shell game to keep his assets away from the reach of the government. In this quest, Engh has a very difficult row to hoe.

As we see it, the record in this case is brimming with evidence supporting the district court's conclusion that the transfer in question was fraudulent. To demonstrate the existence of fraudulent intent, Illinois law looks to the presence of "badges of fraud." *See Kaibab Indus., Inc. v. Family Ready Homes, Inc.*, 372 N.E.2d 139, 142 (Ill. App. Ct. 1978). And Engh has badges galore. For one thing, no consideration was given for property that had considerable value ("love and affection" is not legal consideration, *see O'Neill v. DeLaney*, 415 N.E.2d 1260, 1266 (Ill. App. Ct. 1980)). For another, Engh retained possession of the property, continuing at all times to live there and pay property taxes and maintenance expenses. Transferring the title of assets while retaining their use and enjoyment is a sham. Finally, Engh's transfer was to family members, and although a transfer to family members doesn't always raise eyebrows, eyebrows must be raised here when the transfer is viewed in the context of what else was going on in Engh's life when the conveyance was made. Regardless of what other motivations for the transfer may have been present, a clear intent to avoid a creditor—the IRS—was also present.

Engh's actions soon after the transfer cast more light on his intentions. As his interest in the tax protester move-

ment increased, so did his efforts to put his property and income beyond the reach of the tax laws. Among his efforts were an investment in offshore companies and the conversion of his paychecks into bullion (using commodity and barter associations). In buying bullion, he used separate transactions to fly under the $10,000 requirement for filing currency transaction reports. Engh also put his American Airlines retirement funds into a limited partnership investing in South American gold mines. Another fact cannot be denied: In 1991 Engh was convicted on three counts of federal income tax evasion and five counts of failure to file returns for which he served 28 months of a 48-month prison sentence. The events forming the basis for his convictions started to unfold in 1983 when the Marstonmoor home went into the trust. All of these events, even those occurring after the 1983 property transfer, are fair game as circumstantial evidence bearing on the issue of Engh's state of mind when he moved the Marstonmoor property out of his name.

We could go on and on, but that's unnecessary, for this isn't even a close case. The circumstances overwhelmingly demonstrate that Engh transferred his interest in the Marstonmoor property to the trust in furtherance of a scheme to put his assets out of the reach of the IRS. The judgment of the district court is AFFIRMED.

A true Copy:

            Teste:

_____
*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*