UNITED STATES of America, Plaintiff,

v.

**John G. KITSOS, et al., Defendants.**

**No. 90 C 3449.**

United States District Court,
N.D. Illinois, E.D.

June 4, 1991.
Supplement to Memorandum Opinion
and Order June 11, 1991.

Scott Harris, U.S. Dept. of Justice, Washington D.C., for plaintiff.

John Kitsos, pro se.

---

## MEMORANDUM OPINION AND ORDER [1]

SHADUR, District Judge.

This action has been brought by the United States against John G. Kitsos ("John") and Alice Kitsos ("Alice")—collectively "Kitsoses"—and Universal Bible Church of Bolingbrook ("Church") in this tax deficiency action based on the Tax–Court-adjudicated income tax liabilities of John covering a number of his taxable years. In part the United States seeks a determination that John has retained his interest in the residence at 326 Stafford Way, Bolingbrook, Illinois (the "Property") despite a purported conveyance of that interest to Church in March 1978—a determination that would enable the United States to collect upon John's tax liability by levying upon the Property.[2]

On March 13, 1991 the United States moved for summary judgment under Fed. R.Civ.P. ("Rule") 56 against all three defendants, supporting its motion with (1) a memorandum, (2) the materials called for by Rule 56(e) and (3) the statement required by this District Court's General Rule ("GR") 12(m) (which was adopted to implement Rule 56) and asking for this relief:

1. a reduction to judgment of John's tax liabilities;

2. a finding (a) that the purported transfer to Church of John's interest in the Property was fraudulent or (b) that Church held the property as John's nominee; and

3. an order for sale of the Property, with the proceeds to be distributed to those holding an interest in the Property.

At that time this Court established a schedule for the remaining briefing on the summary judgment motion, but defendants then asked for more time immediately before the scheduled April 15 due date for their responses.[3] Although no really substantive reason was offered in support of that motion, in an April 19 opinion this Court—reluctant to let the matter go effectively by default—granted another 28 days (to May 13) for the required responses.[4] Earlier (on March 28) it had mailed to defendants the type of letter that it customarily sends to all pro se litigants faced with a Rule 56 motion (see Ex. 1).

1. In large part because of the difficulties that have been interposed by defendants and their pro se status—pursued as a matter of right by the individual defendants, but improperly urged (on a persistent basis despite numerous caveats from this Court) on behalf of the corporate defendant—this Court has been required to issue a series of brief written opinions: Its quick search of its chambers file has identified those dated November 13 and December 5, 1990 and January 24, January 30, March 28, April 19, May 3 and (most recently) May 15, 1991. In an effort to make this dispositive opinion as self-contained as possible, this Court has tried to minimize—if not to eliminate entirely—any cross-references to the earlier opinions. But by the same token, this opinion borrows freely from language employed in those earlier efforts.

2. It is undisputed that on March 2, 1978 John and Alice, then holding title to the Property in joint tenancy, conveyed it to Church—but they have continued to occupy the property as their home throughout the intervening 13–plus years. More on this subject later.

3. As n. 1 reflects, John and Alice have chosen to proceed pro se, as is their right. But despite this Court's repeated admonitions that Church cannot do so if it is either a corporation or some other type of entity (with the possible exception of its being a mere alter ego for John, or perhaps for John and Alice together), John persists—even to and including the current filings referred to later in the text—in insisting that Church may proceed in like manner. As explained later, that contention has been wrong from the outset, and it is wrong today.

4. Defendants' response had originally been required to be filed by April 12, but that date was moved up one working day to April 15 by this Court's March 28 opinion, which was accompanied by the contemporaneous letter next referred to in the text and reproduced as Ex. 1 to this opinion. In their request filed a few days before the new April 15 date, defendants asked for a 60–day extension beyond that, but nothing in their motion explained or even suggested why so much time was necessary. When this Court's April 19 opinion granted the 28–day extension to May 13 (rather than the 60 days that defendants had requested), it concluded with this express warning:

Defendants are admonished, however, that this Court expects them to comply with this new timetable, failing which the adverse consequences already spelled out in its March 28 letter may occur.

When the extended May 13 due date arrived, defendants filed these documents rather than the required Rule 56(e) and GR 12(n) responses:

1. another "Motion To Reset and Further Extend Deadline Filing Dates," asking (again!) for 60 more days "in which to complete and file the additional material which is essential in their defense";

2. Church's "Motion to Recind and Set Aside Prior Court Orders and Permit a Trustee to Appear Pro Se for Defendant Church; Deny Plaintiffs Motion of Default and Summary Judgement";

3. John's affidavit as "Trustee of Church in Opposition of Government Motion for Summary Judgement";

4. John's individual affidavit "in Opposition to Summary Judgement"; and

5. Alice's affidavit "in Opposition to Government Summary Judgement Motion."

This Court's May 15 opinion, for the reasons set out at some length there, denied defendants' motion for extension referred to in paragraph 1 and Church's motion referred to in paragraph 2. At this point nothing more has been received from defendants and the United States has fired its final shot—by filing the "Response of the United States in Support of Its Motion for Summary Judgment"—so that the issues are ripe for determination.

### Facts [5]

John's tax liabilities have been established in the amounts respectively set out in the attached group Ex. 2 (United States Exs. D and E) for the calendar years 1971 through 1978. Because those Exhibit figures obviously cannot reflect the full amount of prejudgment interest to the date of the judgment that should be entered here, the entry of that judgment must await further input. Accordingly the United States is being ordered to submit to this Court's chambers and to defendants on or before June 17 its calculation of the amount of a judgment to be entered against John on June 28 (including in its submission an explanation of its calculation of prejudgment interest), together with a proposed form of order for judgment. This Court will await any response to be filed in its chambers by John (or by either or both of the other defendants) on or before June 25 and will then proceed to enter judgment for the appropriate amount on the June 28 date.

To return to the dates relevant to this action in substantive terms, on March 2, 1978 John and Alice joined in executing and recording a deed conveying the Property to Church—a newly-formed corporation that John had organized under the Illinois not-for-profit statutes regarding religious corporations (what had been Sections 46a through 46h of the 1913 amendments to the legislation regarding such corporations, codified as Ill.Rev.Stat. ch. 32, ¶¶ 176–183). Until recently defendants have vacillated between representing Church to be an unincorporated association whose only members were John and Alice [6] and contending that there were also other members—as yet wholly unidentified—of the same unin-

---

**5.** Familiar Rule 56 principles impose on the movant the burden of establishing the lack of a genuine issue of material fact (*Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986)). For that purpose this Court is "not required to draw every conceivable inference from the record—only those inferences that are reasonable"—in the light most favorable to the nonmovant (*Bank Leumi Le–Israel, B.M. v. Lee,* 928 F.2d 232, 236 (7th Cir.1991) and cases cited there). As already indicated, in this instance the United States has complied with GR 12(m) by filing its statement of material facts in support of its motion (cited "U.S. 12(m) ¶ —"). However, despite this Court's specific admonition in its March 28 letter to defendants (Ex. 1), they have not responded appropriately as required by GR 12(n). For the reasons explained in the text of this section, defendants' attempted blurring of the issues by what they *have* chosen to file has not succeeded in raising any genuine material factual issues.

**6.** That position would permit Kitsoses to escape the Scylla of Church's inability to act pro se (because it is not an individual entitled to do that), only to run afoul of the Charybdis of its being merely the alter ego for Kitsoses—so that "its" assets would be reachable to satisfy John's debts.

corporated association.[7] Most recently, however, defendants have "discovered" that their frequent earlier representations were false and that Church is an Illinois not-for-profit corporation formed in 1978, with John as its Trustee.[8] Contemporaneously with the making of that revised representation, Church then asked this Court to (Motion To Recind 3):

1. Set aside prior Court Order and permit a Trustee to appear for the Defendant Universal Bible Church;

2. Deny the Plaintiffs Motion of Default;

3. Deny Plaintiffs Motion for Summary Judgement against the Church;

4. Allow John Kitsos to be impleaded as Trustee of the Church and act herein for the Church.

(The Church was denied a public defender and is unable to pay a private attorney at this time)[9]

---

**7.** That position would wreck Church on the shoals of the Scylla referred to in n. 6.

**8.** Despite the fact that Kitsoses are non-lawyers electing to proceed on their own, it is difficult to ascribe good faith to their earlier representations to the contrary in that respect. As far back as November 23, 1990 John filed a response by Church to this Court's November 13, 1990 memorandum opinion and order. In that response John stated in part:

Title, ownership and ownership interest was legally conveyed and transferred to the Universal Bible Church of Bolingbrook, on or about March 2, 1978.

That date and assertion are totally accurate and were obviously based upon the quit claim deed to the Property running from John and Alice to Church, which bears that date and was recorded on the same day, a copy of which deed was submitted by the United States in conjunction with its Rule 56 motion and another copy of which has now been submitted as part of Church's current filing together with a photocopy of a recorded "Affidavit (sic) of Organization" in which John verified Church's organization. *Both* of those documents specifically identified Church as a corporation—indeed, John's affidavit specifically referred to the statutory provisions (already referred to in the text of this opinion) pursuant to which the incorporation had taken place. Despite that obvious level of knowledge on his part, John's November 23, 1990 response filed on Church's behalf said:

The Universal Bible Church of Bolingbrook is not a business or entity, it is a voluntary unincorporated religious association and ownes (sic) named premises/property and is

---

Because this Court had told defendants often enough that their notions in that respect were and are simply untenable, the May 15 opinion denied Church's motion.

In all events, the most relevant fact for current purposes is that the transfer to Church was without adequate consideration in the sense that is required by the legal doctrines discussed later in this opinion. No transfer tax was paid, based on this representation stamped on the deed and signed by John:

Exempt Under Provisions of Paragraph E, Section 4, Real Estate Transfer Tax Act.

That reference to "Paragraph E," handwritten by John, is to Ill.Rev.Stat. ch. 120, ¶ 1004(e), which reads:

Deeds where the actual consideration is less than $100.[10]

---

a Church of a Christian Religion committed to and following the Bible.

And that reference to Church as "unincorporated" was clearly not an accidental one, because the same document went on to repeat that contention *twice* in an effort to permit Church to proceed without a lawyer, stating in part:

Since the "Church" only exists through its members, its members are now defendants, the defendants can be found without need for a licensed attorney.

**9.** [Footnote by this Court] As recently as April of this year our Court of Appeals has repeated that "[t]here is simply no Sixth Amendment right to counsel in civil cases" (*SEC v. Cherif*, 933 F.2d 403, 417 (7th Cir.1991)).

**10.** [Footnote by this Court] John's current Affidavit in Opposition ¶¶ 16 and 17 deny the absence of consideration for the transfer. That denial has no effect for at least two reasons:

1. No merely conclusory denial without factual support is entitled to be credited on a summary judgment motion (see *Celotex*, 477 U.S. at 323–24, 106 S.Ct. at 2552–53; *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–49, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986)).

2. Where an affidavit statement is directly at odds with the affiant's earlier deposition testimony to the opposite effect (in this instance John's Dep. 106 confirmed that he was paid nothing for the conveyance—he simply said that the claimed understanding was that he and his family would be allowed to live in the residence for a period of time that was not limited then or later), the affidavit may be disregarded (see *Bank Leumi*, 928 F.2d at 237

Ever since that time John has controlled Church—that is, assuming that it has any real existence at all—and he has claimed throughout this litigation to act for it.

As for the post-conveyance conduct of defendants, U.S. 12(m) ¶¶ 16–26 and n. 1 (attached to this opinion as its Ex. 3) tell the story as to the lack of significance to be attached to Church's purported "ownership" of the Property. Defendants respond with no facts—they merely offer generalized denials that do not create any real issue of fact, let alone any *material* factual issue. All that they have offered that could be characterized as even partly responsive to the United States' filing is a statement in their memorandum that the designation of John and Alice as the parties insured on the hazard and liability insurance covering the Property—a designation made with no mention whatever of Church either as a party insured or as having any interest in the Property—is in error and will be corrected. That assertion would not make a difference even if it were to be credited, and this Court is not required to do that.[11]

### John's Tax Liability

John contested his tax liability for the years at issue before the Tax Court. He lost. On August 25, 1987 Tax Court Judge Edna Parker issued a decision (part of Ex. 2 to this opinion) pursuant to that Court's January 22, 1987 opinion, determining the deficiencies in tax and additions to the tax that were later set out in the Form 4340 Certificates of Assessment (the balance of Ex. 2 to this opinion).

Although John purports to challenge the existence of his tax liabilities here, it has been firmly established for nearly a half century that claim preclusion—res judicata—forecloses any such attack (*Commissioner v. Sunnen*, 333 U.S. 591, 598, 68 S.Ct. 715, 719, 92 L.Ed. 898 (1948); *United States v. International Building Co.*, 345 U.S. 502, 73 S.Ct. 807, 97 L.Ed. 1182 (1953)). Nor has any real question been presented here as to the validity of the assessments (see *United States v. Chila*, 871 F.2d 1015, 1017–18 (11th Cir.1989); cf. *United States v. Warner*, 855 F.2d 372, 374 (7th Cir.1988)). As stated earlier, all that is required is to bring the amounts up to date to reflect the full prejudgment interest.

As for the relationship between John's established tax liabilities and the conveyance to Church—the issue whether that conveyance may be disregarded because it was fraudulent as to the United States— the relevant question is whether the United States was a "creditor" of John's at the time of the 1978 conveyance. On that score the opinion of this Court's former colleague Judge Susan Getzendanner, issued in a remarkably similar case (a purported conveyance of a taxpayer's residence to a "church" without the receipt of any current consideration[12]), could have been written expressly to fit this case (*Indiana National Bank v. Gamble*, 612 F.Supp. 1272, 1276 (N.D.Ill.1984) (citations omitted)):

> Although those [prior year's income] taxes had not yet been assessed, the law is well settled, for fraudulent conveyance

and cases cited there, most particularly the discussion and explanation in *Babrocky v. Jewel Food Co.*, 773 F.2d 857, 861–62 (7th Cir.1985)).
And as already reflected in the text, the current denial is also wholly at war with John's contemporaneous 1978 representation made on the recorded deed of the Property to Church.

**11.** See Appendix.

**12.** Just as the breed of so-called "tax protestors" engages in patterns of like conduct in resisting their respective obligations to bear their fair shares of the burdens imposed on all taxpayers, so the transfer of title of taxpayers' residences to self-created "churches" for the same purpose

seems to be a recurrent pattern. In addition to the *Indiana National Bank* case next cited in the text and the *Loving Saviour Church* case referred to later in this opinion, this Court has retained a copy of the unpublished December 3, 1990 order of our Court of Appeals in which it affirmed the decision of a Wisconsin district judge who had reached the same conclusions that this Court has arrived at here (*United States v. Neumann*, 919 F.2d 740 (7th Cir.1990) (unpublished order)). Although this Court does not of course cite *Neumann* as authority because of the strictures of Seventh Circuit Rule 53, it has noted with interest the Court of Appeals' reliance on *Chila* for precisely the same proposition on·which this Court has found *Chila* persuasive.

purposes, tax liabilities are due and owing on the date the returns are required to be filed and not the date of assessment.

### Fraud in the Conveyance of the Property

■ As just indicated, the United States' status as "creditor" of a taxpayer before that taxpayer's execution and delivery of a challenged conveyance is one step along the road to subjecting the conveyed property to a later-established tax lien. For the United States to establish and enforce that lien for John's taxes against the Property—an asset with title reposed in someone else—it must establish the existence of John's current legal interest in the Property (see 26 U.S.C. § 6321) under state law, which is consistently recognized as the source and definer of such property interests (*Aquilino v. United States*, 363 U.S. 509, 513–14, 80 S.Ct. 1277, 1280–81, 4 L.Ed.2d 1365 (1960)).

Codifying the classic fraudulent-intent requirement in the Illinois law of fraudulent conveyances, former Ill.Rev.Stat. ch. 59, ¶ 4 provided: [13]

> Every ... conveyance ... or transfer of ... any estate, real or personal ... made with the intent to disturb, delay, hinder or defraud creditors or other persons, ... shall be void as against such creditors, purchasers and other persons.

But that is only one of two roads potentially leading to the same destination—just six months ago the Illinois Supreme Court again recapitulated the alternative doctrine in that area in a statement that, stripped of its numerous citations, is succinct indeed (*Gendron v. Chicago & North Western Transportation Co.*, 139 Ill.2d 422, 437–38, 151 Ill.Dec. 545, 552–53, 564 N.E.2d 1207, 1214–15 (1990) (citations omitted)):

> Illinois recognizes two categories of fraudulent conveyances: those which are fraudulent in fact and those which are fraudulent in law. In fraud-in-fact cases a specific intent to "disturb, delay, hinder or defraud" must be proved. ("There must be evidence to show a fraudulent intent before a conveyance made upon a valuable consideration may be held fraudulent"). In fraud-in-law cases, on the other hand, a conveyance may be presumed fraudulent based on certain circumstances surrounding the conveyance. In order to establish that a conveyance is fraudulent in law, three elements must be present: (1) there must be a transfer made for no or inadequate consideration; (2) there must be existing or contemplated indebtedness against the transferor; and (3) it must appear that the transferor did not retain sufficient property to pay his indebtedness.

■ No even arguable dispute exists as to the presence of each of those factors here. Although it may well be unnecessary to belabor the obvious in light of what has already been said as to the facts of the case, it requires only a brief restatement to correlate those facts with the relevant factors:

> 1. No meaningful consideration flowed from Church to John or to Kitsoses for the conveyance.[14]

---

13. Effective January 1, 1990 that statutory provision was repealed in conjunction with Illinois' enactment of the Uniform Fraudulent Transfer Act, Ill.Rev.Stat. ch. 59, ¶¶ 101–112. There is current case law that applies the new statute retroactively for purposes of granting injunctive relief against pre-enactment fraudulent conveyances (*Cannon v. Whitman Corp.*, 212 Ill.App.3d 79, 155 Ill.Dec. 503, 507, 569 N.E.2d 1114, 1118 (5th Dist.1991); *Farm Credit Bank of St. Louis v. Lynn*, 204 Ill.App.3d 538, 540, 149 Ill.Dec. 659, 661, 561 N.E.2d 1355, 1357 (3d Dist.1990)). That of course does not necessarily control the question whether the new statute would also be given retroactive effect as to John's conveyance of the Property to Church, but it really makes no difference to the result here whether that

question would get a "yes" or "no" answer—for if it were "yes," the new provisions of Ill.Rev. Stat. ch. 59, ¶ 105(a)(1) would produce the same result as the statute that is quoted in the text of this opinion as to any conveyance found fraudulent *in fact,* while the new provisions of Ill.Rev. Stat. ch. 59, ¶¶ 105(a)(2) or 106 would produce the same result as the analysis contained in the text of this opinion as to any conveyance fraudulent *in law.*

14. Where the rights of creditors are at risk, instead of the quite different question of enforceability of promises as between contracting parties, the relevant determination is whether *full* value has been given—rather than the minimal ("Even a peppercorn") notion of considera-

2. All of John's tax liabilities for the years that had preceded the conveyance, even though not yet assessed at the time of the conveyance, constituted the requisite indebtedness (see, e.g., *Indiana National Bank* and cases cited there).

3. John himself has acknowledged that he did not retain the necessary assets to pay that tax liability or any other indebtedness.

That is enough to invalidate the conveyance to Church and to render the Property subject to the United States' lien for taxes. Even though it seems plain that further analysis would also show that the identical result would be mandated on the alternative fraud-in-fact theory, that approach would require the inferential determination of John's (or Kitsoses') "intent to disturb, delay, hinder or defraud creditors or other persons"—and there is no need to prolong the discussion to make that determination, only to get to the same destination twice over.

### Church's Alter Ego Status

■ Still another route leading to the same result would be to arrive at a determination that Church is no more than a nominee—an alter ego—of John or Kitsoses. Most frequently that issue of whether separate corporate existence may be disregarded is encountered in the converse situation, where shareholders are sought to be held personally liable for obligations that have nominally been incurred by their corporation—the "piercing the corporate veil" notion. Thus *McCracken v. Olson Companies, Inc.*, 149 Ill.App.3d 104, 109–10, 102 Ill.Dec. 594, 598, 500 N.E.2d 487, 491 (1st Dist.1986) (citations omitted) has explained:

> Where a corporation is found to be merely the alter-ego or business conduit of a governing or dominant personality, however, the corporate entity will be disregarded and the veil of limited liability pierced. For the corporate veil to be pierced: (1) there must be such unity of interest and ownership that the separate personalities of the corporation and the

individual no longer exist; and (2) circumstances must be such that an adherence to the fiction of a separate corporate existence would promote injustice or inequitable consequences.

In determining whether to disregard a corporate entity, the court will not rest its decision on a single factor but will rather look to a number of variables such as inadequate capitalization, failure to observe corporate formalities, the commingling of funds, and the absence of corporate records. Where such variables are coupled with some element of injustice or fundamental unfairness, the corporation will be considered as an aggregate of persons both in equity and at law and its officers, directors and shareholders will be held individually liable for the corporation's debts and obligations.

Even though the focus of that discussion was on the attribution of corporate debts to the shareholders despite the normal rule of limited liability, what appears most relevant to the different question posed here is the abundantly clear proposition that the doctrine is an equitable one—a doctrine that emphasizes the avoidance of "injustice or inequitable consequences" or "fundamental unfairness." In that light it would surely seem that identical considerations ought to control where (as. here) the issue is whether the corporation is no more than a nominee whose "assets" should therefore be subject to the obligations of the party that transferred those assets to it.

This Court's independent research has uncovered no Illinois cases comparable to the current one, nor have the United States' memoranda cited any. But precedent elsewhere has uniformly cut through the kind of underbrush that is sought to be strewn about by Kitsoses, and has uniformly subjected assets held by comparable nominees to the federal income tax obligations of the taxpayers who have divested themselves of those assets: see such cases as *Loving Saviour Church v. United States*, 556 F.Supp. 688, 691–93 (D.S.D.1983) (another "church" case with parallel facts, decided under South Dakota

tion that applies under the law of contract enforceability.

"alter ego" principles identical to those applied in Illinois); *Lewis G. Allen Family Trust v. United States*, 558 F.Supp. 152, 157–58 (D.Kan.1982) (dealing under Kansas law with another favorite tax dodge, the creation and funding of a purported trust via the conveyance of the taxpayer's residence and other assets).

All the facts of this case—John's continued exercise of dominion over the Stafford Way residence after the purported transfer, the continued identification of the Property by the Kitsos' rather than the Church's name (both the mailbox and, as previously stated, the hazard insurance reflect that) and the fancy footwork that has been attempted to be exhibited by John and Alice as to just what kind of animal Church is, who its members are and so on—would plainly call for a disregard of Church's independent existence. Like the fraud-in-law concept, those facts cause Property to be subject to John's tax obligations to the United States.

### Conclusion

There is no genuine issue of material fact in any respect relevant to this litigation, and the United States is entitled to a judgment as a matter of law. That means these things:

1. Judgment will be ordered to be entered in favor of the United States and against John in the full amount of his tax liability for the years 1971 through 1978. For that purpose this Court will await the United States' submission to this Court's chambers on or before June 17 of its up-to-date calculations based on an anticipated judgment date of June 28, 1991, to be considered in conjunction with any responsive submission filed by one or more defendants in this Court's chambers on or before June 25.

2. It is hereby declared that John's purported transfer of his interest in the 326 Stafford Way, Bolingbrook, Illinois Property was fraudulent in law, and also that the Universal Bible Church of Bolingbrook holds title to the Property not in its own right but rather as John's nominee.

3. This Court authorizes the sale of the Property to be conducted promptly after the entry of judgment against John, with the proceeds of sale to be distributed to the United States and others holding any interest in the Property, as their respective interests may appear. For that purpose this Court invites filings by the United States, Olympic Savings and Loan Association and Kitsoses on or before June 25, 1991, suggesting the procedures to be followed for that purpose.

### APPENDIX

Courts frequently encounter, in the summary judgment context, efforts by litigants to forestall the entry of adverse judgments by interposing questionable or even obviously bogus factual issues. Because the very nature of summary judgment is such as to cut a case short before a full-blown trial, the conventional (and proper) wisdom from no less an authority than the United States Supreme Court is that the trial judge should avoid choosing between conflicting versions of the material facts (*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986)):

> Our prior decisions may not have uniformly recited the same language in describing genuine factual issues under Rule 56, but it is clear enough from our recent cases that at the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial.

But a court is not required to stand helpless just because a litigant tenders something that *purports* to create a disputed factual issue. *Anderson, id.* at 249–50, 106 S.Ct. at 2510–11 went on to say immediately following the language quoted above in the text:

> As *Adickes* [*v. S.H. Kress & Co.*, 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970)] and [*First National Bank of Arizona v.*] *Cities Service* [*Co.*, 391 U.S. 253, 88 S.Ct. 1575, 20 L.Ed.2d 569 (1968)]

indicate, there is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. *Cities Service, supra,* at 288–289 [88 S.Ct. at 1592–93]. If the evidence is merely colorable, *Dombrowski v. Eastland,* 387 U.S. 82 [87 S.Ct. 1425, 18 L.Ed.2d 577] (1967) (*per curiam*), or is not significantly probative, *Cities Service, supra,* at 290 [88 S.Ct. at 1593], summary judgment may be granted.

Just before *Anderson* our Court of Appeals had identified circumstances in which a court contemplating a summary judgment motion could block the effort of the opposing party to generate a false conflict of material fact (*Stewart v. RCA Corp.,* 790 F.2d 624, 628 (7th Cir.1986) (citation omitted)):

> A court might be able to find a witness incredible as a matter of law if he had told a different story under oath before recognizing the legal significance of the truth, or if the current story were irrefutably contradicted by documentary evidence.

And although this Court has not found a post-*Anderson* opinion from our own Court of Appeals, the clear thrust of *Anderson's* teaching is accurately reflected in such cases as *Johnson v. Washington Metropolitan Area Transit Authority,* 883 F.2d 125, 128 (D.C.Cir.1989) (citations to illustrative decisions omitted):

> Judges may, under certain circumstances, lawfully put aside testimony that is so undermined as to be incredible. The removal of a factual question from

the jury is most likely when a plaintiff's claim is supported solely by the plaintiff's own self-serving testimony, unsupported by corroborating evidence, and undermined either by other credible evidence, physical impossibility or other persuasive evidence that the plaintiff has deliberately committed perjury.

This Court, though of course it recognizes those principles, has tended to go slowly in applying them. Here John has furnished more than ample justification for flatly disregarding the representations that he has made, even in affidavit form. But as the text reflects, this Court has not gone the last mile of treating defendants' submissions as "inherently incredible" and thus to be ignored entirely. Instead this opinion has limited itself to disregarding assertions via affidavit that cannot stand in the face of prior sworn testimony (see, e.g., *Bank Leumi,* 928 F.2d at 237 and cases cited there). And it has also not credited assertions that have not satisfied the admissible-in-evidence standard established by Rule 56(e)—such as, for example, statements tendered only as part of a motion (as to the need to comply with the Rule 56(e) requirement generally, see such cases as *Friedel v. City of Madison,* 832 F.2d 965, 969–70 (7th Cir.1987); and as to the insufficiency of statements in a motion or memorandum to meet even the *pleading* requirements of Rule 12(b)(6)—from which the obvious insufficiency of such statements to meet the *proof* requirements of Rule 56(e) would follow a fortiori—see such cases as *Car Carriers, Inc. v. Ford Motor Co.,* 745 F.2d 1101, 1107 (7th Cir.1984)).

# APPENDIX
# EXHIBIT 1[1]

### UNITED STATES DISTRICT COURT
### NORTHERN DISTRICT OF ILLINOIS

CHAMBERS OF
MILTON I. SHADUR
JUDGE

CHICAGO, ILLINOIS 60604

March 28, 1991

John G. Kitsos
326 Stafford Way
Bolingbrook, IL 60439

Alice Kitsos
326 Stafford Way
Bolingbrook, IL 60439

Universal Bible Church of Bolingbrook
326 Stafford Way
Bolingbrook, IL 60439

Re: United States of America v. John Kitsos,
et al., 90 C 3449

Dear Litigants:

As you know, the lawsuit brought against you by the United States is now pending before this Court. As contemplated by the scheduling order previously issued in the case, you are also aware that in accordance with Rule 56 of the Federal Rules of Civil Procedure the United States has now filed its motion for summary judgment, together with supporting papers.[1]

As contemplated by Rule 56 and by the prior scheduling order as now modified by the enclosed order, I have now required that any responsive materials that you plan to file must be submitted (in this Court's chambers) on or before April 15, with the United States' reply to be filed on or before April 29. As originally ordered, the case is set for announcement of my decision on the summary judgment motion (or alternatively as to Church, the default motion) on May 29, 1991 at 9 a.m. Because of the importance and potentially final nature of a summary judgment motion, this letter is intended to inform you of the consequences if you were to ignore this Court's order or if any materials you do submit are legally insufficient.

By its motion for summary judgment, the United States is asking to have the suit decided in its favor without a full-scale

---

[1] As to defendant Church, the United States alternatively asks for a default judgment. As the enclosed order reflects, the briefing schedule on that motion will be the same as the schedule on the summary judgment motion.

**1240**

March 28, 1991
Page Two

trial, based on the evidence presented in the documents attached
to its motion. Unless you answer the motion with your own
affidavits or properly supported documentary evidence or both,
only the United States' evidence will be before this Court. Thus
your failure to respond in that way would be the equivalent of
your failing to present any evidence in your favor at a trial.

Under Rule 56(e) of the Federal Rules of Civil Procedure, a
copy of which is enclosed, you may not simply rest on any unsworn
documents that you may previously have filed in court. Such
documents are not a proper response to a motion for summary
judgment. Under the same Rule, if you do not submit affidavits
or documentary evidence now, this Court may accept the facts that
have been declared in the United States' submission as true and
(if those facts justify a decision in the United States' favor)
enter summary judgment against you. In that event you will have
lost your case, and judgment will be entered in favor of the
United States.

That same result may follow if any matters you do submit are
not legally sufficient to establish any defense against the
United States' claims. Of course this Court is not in a position
to indicate what is necessary for that purpose. It will simply
evaluate any submission that you choose to file on or before the
April 15 deadline.

To assist the Court in determining whether any factual
disputes exist and, if they do, whether such disputes are legally
significant, our District Court has adopted its own General Rules
12(m) and 12(n) (a photocopy of which rules is also enclosed) to
supplement Rule 56. As you have seen, the United States has
complied with General Rule 12(m) by providing a Statement of
Facts. As part of any submission you choose to file, you will be
expected to comply with General Rule 12(n) (as you will note, that
rule specifically provides that unless your own statement in
response shows that any part or parts of the United States'
General Rule 12(m) statement is or are disputed, the statement
[or the parts not identified by you as in dispute] will be
considered as having been admitted).

Sincerely,

Milton I. Shadur

MIS:wb
enclosure
cc: Scott H. Harris, Esq.

## Federal Rule of Civil Procedure 56(e)

**(e) Form of Affidavits; Further Testimony; Defense Required.** Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein. Sworn or certified copies of all papers or parts thereof referred to in an affidavit shall be attached thereto or served therewith. The court may permit affidavits to be supplemented or opposed by depositions, answers to interrogatories, or further affidavits. When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be entered against him.

## General Rule 12

### m. Motions for summary judgment; Moving party

With each motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure the moving party shall serve and file, in addition to the affidavits (if any) and other materials referred to in Rule 56(e) and a supporting memorandum of law, a statement of material facts as to which the moving party contends there is no genuine issue and that entitle the moving party to a judgment as a matter of law including a description of the parties and all facts supporting venue and jurisdiction in this Court. That statement shall consist of short numbered paragraphs, including within each paragraph specific references to the affidavits, parts of the record, and other supporting materials relied upon to support the facts set forth in that paragraph. Failure to submit such a statement constitutes grounds for denial of the motion.

### n. Motions for summary judgment; Opposing party

Each party opposing a Rule 56 motion shall serve and file, together with opposing affidavits (if any) and other materials referred to in Rule 56(e) and a supporting memorandum of law, a concise response to the movant's statement. That response shall contain (1) a response to each numbered paragraph in the moving party's statement, including, in the case of any disagreement, specific references to the affidavits, parts of the record, and other supporting materials relied upon, and (2) a statement, consisting of short numbered paragraphs, of any additional facts which require the denial of summary judgment, including references to the affidavits, parts of the record, and other supporting materials relied upon. All material facts set forth in the statement required of the moving party will be deemed to be admitted unless controverted by the statement of the opposing party.

EXHIBIT 2

UNITED STATES TAX COURT

JOHN G. KITSOS,

 Petitioner,

 v.

COMMISSIONER OF INTERNAL REVENUE,

 Respondent.

Docket No. 29768-82

DECISION

Pursuant to the opinion of the Court filed January 22, 1987, and incorporating herein the facts recited in the respondent's computation as the findings of the Court, it is

ORDERED and DECIDED: That there are deficiencies in income taxes and additions to the tax due from the petitioner as follows:

Deficiencies

| Taxable Year | Income Tax | Additions to the Tax | | |
|---|---|---|---|---|
| | | § 6653(a) | § 6651 | § 6654 |
| 1971 | $3,154.00 | 157.70 | 788.50 | 100.93 |
| 1972 | 3,040.00 | 152.00 | 760.00 | 97.25 |
| 1973 | 3,482.00 | 174.10 | 870.50 | 111.16 |
| 1974 | 4,953.00 | 247.65 | 1,238.25 | 157.79 ✓ |
| 1975 | 3,959.00 | 197.95 | 989.75 | 170.83 |
| 1976 | 3,056.00 | 152.80 | 764.00 | 113.46 |
| 1977 | 3,022.00 | 151.10 | 755.50 | 107.98 |
| 1978 | 1,964.00 | 98.20 | 491.00 | 62.76 |

(Signed) Edna G. Parker

Judge.

Entered: AUG 2 5 1987

**United States** **of America**

**Department of the Treasury**
**Internal Revenue Service**

Date: October 20, 1989

CERTIFICATE OF OFFICIAL RECORD

I certify that the annexed: transcript of John G Kitsos herein with respect to Form 1040

taxes specified is a true and complete transcript for the period 7112 and all assessments,

penalties, interest, abatements, credits, refunds and advance or unidentified payments

relating thereto as disclosed by the records of this office as of the date of this

certification are shown therein. Consisting of 1 page

under the custody of this office

IN WITNESS WHEREOF, I have hereunto set my
hand, and caused the seal of this office to be affixed,
on the day and year first above written.

By direction of the Secretary of the Treasury:

*Edwina Gray*
for George Kerr
Manager, Transfer & Certification Unit
Kansas City Service Center

Form 2866 (Rev. 12-88)

**1244**

---

CERTIFICATE OF ASSESSMENTS AND PAYMENTS

---

JOHN. G KITSOS 326 STAFFORD WAY 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 1040
 BOLINGBROOK,IL 60439-2128

| Date | Explanation of Trans. | Assessment | Credit | Balance | DLN or Acct# | 23cDate | Period |
|------|----------------------|-----------|--------|---------|-------------|---------|--------|
| 05-28-81 | Return Filed | .00 | | | 09211-143-10319-1 | | 7112 |
| 05-02-88 | Audit Deficiency | .00 | | | 09247-498-79009-8 | | |
| 03-28-88 | Audit Deficiency | 3,154.00 | | | 09251-072-17218-8 | 03-28-88 | |
| | Delinquency Penalty | 788.50 | | | | | |
| | Estimated Tax Penalty | 100.93 | | | | | |
| | Negligence penalty | 157.70 | | | | | |
| | Restricted Interest | 8,113.50 | | | | | |
| 08-01-88 | Restricted Interest | 262.82 | | | 09254-561-15051-8 | 08-01-88 | |
| 10-10-88 | Restricted Interest | 96.58 | | | 09254-637-15021-8 | 10-10-88 | |
| 12-12-88 | Fees and Costs | 16.00 | | 12,690.03 | 36218-727-00312-8 | 12-12-88 | |
| 03-28-88 | First Notice | | | | | | |

I certify that the foregoing transcript of the taxpayer named above inrespect to the taxes specified is a true and complete tran-
script for the period stated, and all assessment,penalties, interest,abatements, credits, refunds and advance or unidentified payment
relating thereto as disclosed by the records of this office as of the date of this certification are shown therein.

---

Signature of Manager, Transfer & Certification Unit Location: Internal Revenue Service Center
(required for certification) Midwest Region, Kansas City, MO

*Edwina Gray* Date: OCT 2 0 1989

---

page: 1

 

**United States** of America

**Department of the Treasury**
**Internal Revenue Service**

Date: October 20, 1989

CERTIFICATE OF OFFICIAL RECORD

I certify that the annexed: transcript of John G Kitsos herein with respect to Form 1040

taxes specified is a true and complete transcript for the period 7212 and all assessments,

penalties, interest, abatements, credits, refunds and advance or unidentified payments

relating thereto as disclosed by the records of this office as of the date of this

certification are shown therein. Consisting of 1 page

under the custody of this office.

IN WITNESS WHEREOF, I have hereunto set my
hand, and caused the seal of this office to be affixed,
on the day and year first above written.

By direction of the Secretary of the Treasury:

*Edwina Gray*

George Kerr
Manager, Transfer & Certification Unit
Kansas City Service Center

Form 2866 (Rev. 12-88)

**1246**

JOHN G KITSOS 326 STAFFORD WAY
BOLINGBROOK, IL 60439-2128 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 1040

| Date | Explanation of Trans. | Assessment | Credit | Balance | DLN or Acct# | 23cDate | Period |
|------|----------------------|-----------|--------|---------|--------------|---------|--------|
| 05-28-81 | Return Filed | .00 | | | 09211-143-10320-1 | | 7212 |
| 05-02-88 | Audit Deficiency | .00 | | | 09247-498-79003-8 | | |
| 03-28-88 | Audit Deficiency | 3,040.00 | | | 09251-072-17219-8 | 03-28-88 | |
| | Delinquency Penalty | 760.00 | | | | | |
| | Estimated Tax Penalty | 97.25 | | | | | |
| | Negligence penalty | 152.00 | | | | | |
| | Restricted Interest | 7,493.56 | | | | | |
| 08-01-88 | Restricted Interest | 246.34 | | 11,789.15 | 09254-561-15050-8 | 08-01-88 | |
| 03-28-88 | First Notice | | | | | | |

I certify that the foregoing transcript of the taxpayer named above inrespect to the taxes specified is a true and complete transcript for the period stated, and all assessment,penalties, interest,abatements, credits, refunds and advance or unidentified payment relating thereto as disclosed by the records of this office as of the date of this certification are shown therein.

Signature of Manager, Transfer & Certification Unit
(required for certification)

*Edwina Gray*

Location: Internal Revenue Service Center
Midwest Region, Kansas City, MO

Date: **OCT 2 0 1989**

page: 1

**United States** **of America**

**Department of the Treasury**
**Internal Revenue Service**

Date: October 20, 1989

### CERTIFICATE OF OFFICIAL RECORD

I certify that the annexed transcript of John G Kitsos herein with respect to Form 1040

taxes specified is a true and complete transcript for the period 7312 and all assessments,

penalties, interest, abatements, credits, refunds and advance or unidentified payments

relating thereto as disclosed by the records of this office as of the date of this

certification are shown therein. Consisting of 1 page

under the custody of this office

IN WITNESS WHEREOF, I have hereunto set my
hand, and caused the seal of this office to be affixed,
on the day and year first above written.

By direction of the Secretary of the Treasury:

*Edwina Gray*

for George Kerr
Manager, Transfer & Certification Unit
Kansas City Service

Form 2866 (Rev. 12-88)

**1248**

---

CERTIFICATE OF ASSESSMENTS AND PAYMENTS

---

JOHN G KITSOS 326 STAFFORD WAY 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 1040
 BOLINGBROOK, IL 60439-2128

| Date | Explanation of Trans. | Assessment | Credit | Balance | DLN or Acct# | 23cDate | Period |
|------|----------------------|-----------|--------|---------|-------------|---------|--------|
| 5-28-81 | Return Filed | .00 | | | 09211-143-10321-1 | | 7312 |
| 5-02-88 | Audit Deficiency | .00 | | | 09247-498-79002-8 | | |
| 3-28-88 | Audit Deficiency | 3,482.00 | | | 09251-072-17220-8 | 03-28-88 | |
| | Delinquency Penalty | 870.50 | | | | | |
| | Estimated Tax Penalty | 111.16 | | | | | |
| | Negligence penalty | 174.10 | | | | | |
| | Restricted Interest | 8,208.92 | | | | | |
| 8-01-88 | Restricted Interest | 274.18 | | 13,120.86 | 09254-561-15049-8 | 08-01-88 | |
| 3-28-88 | First Notice | | | | | | |

I certify that the foregoing transcript of the taxpayer named above inrespect to the taxes specified is a true and complete tran-
script for the period stated, and all assessment,penalties, interest,abatements, credits, refunds and advance or unidentified payment
relating thereto as disclosed by the records of this office as of the date of this certification are shown therein.

---

Signature of Manager, Transfer & Certification Unit Location: Internal Revenue Service Center
(required for certification) Midwest Region, Kansas City, MO

*Edwina Gray* Date: OCT 2 0 1989

---

page: 1

**1249**

**United States** **of America**

**Department of the Treasury**
**Internal Revenue Service**

Date: October 20, 1989

CERTIFICATE OF OFFICIAL RECORD

I certify that the annexed: transcript of John G Kitsos herein with respect to Form 1040

taxes specified is a true and complete transcript for the period 7412 and all assessments,

penalties, interest, abatements, credits, refunds and advance or unidentified payments

relating thereto as disclosed by the records of this office as of the date of this

certification are shown therein. Consisting of 1 page

under the custody of this office.

IN WITNESS WHEREOF, I have hereunto set my
hand, and caused the seal of this office to be affixed,
on the day and year first above written.

By direction of the Secretary of the Treasury·

*for* *Edwina Gray*
George Kerr
Manager, Transfer & Certification Unit
Kansas City Service Center

Form 2866 (Rev. 12-88)

**1250**

CERTIFICATE OF ASSESSMENTS AND PAYMENTS

JOHN G KITSOS 326 STAFFORD WAY 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 1040
 BOLINGBROOK, IL 60439-2128

| Date | Explanation of Trans. | Assessment | Credit | Balance | DLN or Acct# | 23cDate | Period |
|------|----------------------|-----------|--------|---------|--------------|---------|--------|
| 05-28-81 | Return Filed | .00 | | | 09211-143-10322-1 | | 7412 |
| 05-02-88 | Audit Deficiency | .00 | | | 09247-498-79004-8 | | |
| 03-28-88 | Audit Deficiency | 4,953.00 | | | 09251-072-17221-8 | 03-28-88 | |
| | Delinquency Penalty | 1,238.25 | | | | | |
| | Estimated Tax Penalty | 157.79 | | | | | |
| | Negligence penalty | 247.65 | | | | | |
| | Restricted Interest | 11,144.59 | | | | | |
| 08-01-88 | Restricted Interest | 378.63 | | 18,119.91 | 09254-561-15048-8 | 08-01-88 | |
| 03-28-88 | First Notice | | | | | | |

I certify that the foregoing transcript of the taxpayer named above inrespect to the taxes specified is a true and complete transcript for the period stated, and all assessment,penalties, interest,abatements, credits, refunds and advance or unidentified payment relating thereto as disclosed by the records of this office as of the date of this certification are shown therein.

Signature of Manager, Transfer & Certification Unit Location: Internal Revenue Service Center
(required for certification) Midwest Region, Kansas City, MO

*Edwina Gray* Date: OCT 2 0 1989

page: 1

 

**United States** of America

**Department of the Treasury**
**Internal Revenue Service**

Date: October 20, 1989

### CERTIFICATE OF OFFICIAL RECORD

I certify that the annexed: transcript of John G Kitsos herein with respect to Form 1040 taxes specified is a true and complete transcript for the period 7512 and all assessments, penalties, interest, abatements, credits, refunds and advance or unidentified payments relating thereto as disclosed by the records of this office as of the date of this certification are shown therein. Consisting of 1 page

under the custody of this office.

IN WITNESS WHEREOF, I have hereunto set my hand, and caused the seal of this office to be affixed, on the day and year first above written.

By direction of the Secretary of the Treasury:

for Edwina Gray

George Kerr
Manager, Transfer & Certification Unit
Kansas City Service Center

Form 2866 (Rev. 12-88)

**1252**

CERTIFICATE OF ASSESSMENTS AND PAYMENTS

OHN G KITSOS 326 STAFFORD WAY 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 1040
 BOLINGBROOK,IL 60439-2128

| Date | Explanation of Trans. | Assessment | Credit | Balance | DLN or Acct# | 23cDate | Period |
|------|----------------------|-----------|--------|---------|-------------|---------|--------|
| 5-28-81 | Return Filed | .00 | | | 09211-143-10323-1 | | 7512 |
| 7-02-88 | Audit Deficiency | .00 | | | 09247-498-79005-8 | | |
| 3-28-88 | Audit Deficiency | 3,959.00 | | | 09251-072-17222-8 | 03-28-88 | |
| | Delinquency Penalty | 989.75 | | | | | |
| | Estimated Tax Penalty | 170.83 | | | | | |
| | Negligence penalty | 197.95 | | | | | |
| | Restricted Interest | 8,343.31 | | | | | |
| 8-01-88 | Restricted Interest | 291.55 | | 13,952.39 | 09254-561-15047-8 | 08-01-88 | |
| 3-28-88 | First Notice | | | | | | |

certify that the foregoing transcript of the taxpayer named above inrespect to the taxes specified is a true and complete tran-
cript for the period stated, and all assessment,penalties, interest,abatements, credits, refunds and advance or unidentified payment
elating thereto as disclosed by the records of this office as of the date of this certification are shown therein.

Signature of Manager, Transfer & Certification Unit Location: Internal Revenue Service Center
required for certification) Midwest Region, Kansas City, MO

*Edwina Gray* Date: OCT 2 0 1989

 page: 1

# United States of America

### Department of the Treasury
### Internal Revenue Service

Date: October 20, 1989

CERTIFICATE OF OFFICIAL RECORD

I certify that the annexed: transcript of John G Kitsos herein with respect to Form 1040

taxes specified is a true and complete transcript for the period 7612 and all assessments,

penalties, interest, abatements, credits, refunds and advance or unidentified payments

relating thereto as disclosed by the records of this office as of the date of this

certification are shown therein. Consisting of 1 page

under the custody of this office

IN WITNESS WHEREOF, I have hereunto set my hand, and caused the seal of this office to be affixed, on the day and year first above written.

By direction of the Secretary of the Treasury:

*for* *Edwina Gray*

George Kerr
Manager, Transfer & Certification Unit
Kansas City Service Center

Form 2866 (Rev. 12-88)

**1254**

---

## CERTIFICATE OF ASSESSMENTS AND PAYMENTS

---

4N G KITSOS 326 STAFFORD WAY 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 1040
 BOLINGBROOK, IL 60439-2128

| Date | Explanation of Trans. | Assessment | Credit | Balance | DLN or Acct# | 23cDate | Period |
|------|----------------------|-----------|--------|---------|-------------|---------|--------|
| -28-81 | Return Filed | .00 | | | 09211-143-10324-1 | | 7612 |
| -02-88 | Audit Deficiency | .00 | | | 09247-498-79006-8 | | |
| -28-88 | Audit Deficiency | 3,056.00 | | | 09251-072-17223-8 | 03-28-88 | |
| | Delinquency Penalty | 764.00 | | | | | |
| | Estimated Tax Penalty | 113.46 | | | | | |
| | Negligence penalty | 152.80 | | | | | |
| | Restricted Interest | 6,057.17 | | | | | |
| -01-88 | Restricted Interest | 232.05 | | 10,375.48 | 09254-561-15046-8 | 08-01-88 | |
| -28-88 | First Notice | | | | | | |

I certify that the foregoing transcript of the taxpayer named above inrespect to the taxes specified is a true and complete tran-
script for the period stated, and all assessment,penalties, interest,abatements, credits, refunds and advance or unidentified payment
relating thereto as disclosed by the records of this office as of the date of this certification are shown therein.

---

Signature of Manager, Transfer & Certification Unit Location: Internal Revenue Service Center
(required for certification) Midwest Region, Kansas City, MO

*Edwina Gray*

Date: OCT 2 0 1989

page: 1

# United States of America

### Department of the Treasury
### Internal Revenue Service

Date: October 20, 1989

CERTIFICATE OF OFFICIAL RECORD

I certify that the annexed· transcript of John G Kitsos herein with respect to Form 1040 taxes specified is a true and complete transcript for the period 7712 and all assessments, penalties, interest, abatements, credits, refunds and advance or unidentified payments relating thereto as disclosed by the records of this office as of the date of this certification are shown therein. Consisting of 1 page

under the custody of this office.

IN WITNESS WHEREOF, I have hereunto set my hand, and caused the seal of this office to be affixed, on the day and year first above written.

By direction of the Secretary of the Treasury:

*for* *Edwina Gray*

George Kerr
Manager, Transfer & Certification Unit
Kansas City Service Center

Form 2866 (Rev. 12-88)

**1256**

---

CERTIFICATE OF ASSESSMENTS AND PAYMENTS

---

OHN G KITSON 326 STAFFORD WAY 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 1040
 BOLINGBROOK,IL 60439-2128

| Date | Explanation of Trans. | Assessment | Credit | Balance | DLN or Acct# | 23cDate | Period |
|------|----------------------|-----------|--------|---------|--------------|---------|--------|
| 5-28-81 | Return Filed | .00 | | | 09211-143-10325-1 | | 7712 |
| 5-02-88 | Audit Deficiency | .00 | | | 09247-498-79007-8 | | |
| 3-28-88 | Audit Deficiency | 3,022.00 | | | 09251-072-17224-8 | 03-28-88 | |
| | Delinquency Penalty | 755.50 | | | | | |
| | Estimated Tax Penalty | 107.98 | | | | | |
| | Negligence penalty | 151.10 | | | | | |
| | Restricted Interest | 5,622.09 | | | | | |
| 8-01-88 | Restricted Interest | 206.13 | | 9,864.80 | 09254-561-15045-8 | 08-01-88 | |
| 3-28-88 | First Notice | | | | | | |

certify that the foregoing transcript of the taxpayer named above inrespect to the taxes specified is a true and complete tran-
cript for the period stated, and all assessment,penalties, interest,abatements, credits, refunds and advance or unidentified payment
elating thereto as disclosed by the records of this office as of the date of this certification are shown therein.

---

ignature of Manager, Transfer & Certification Unit Location: Internal Revenue Service Center
required for certification) Midwest Region, Kansas City, MO

*Edwina Gray*

 Date: OCT 2 0 1989

 page: 1

 

# United States of America

### Department of the Treasury
### Internal Revenue Service

Date: October 20, 1989

CERTIFICATE OF OFFICIAL RECORD

I certify that the annexed transcript of John G Kitsos herein with respect to Form 1040 taxes specified is a true and complete transcript for the period 7812 and all assessments, penalties, interest, abatements, credits, refunds and advance or unidentified payments relating thereto as disclosed by the records of this office as of the date of this certification are shown therein. Consisting of 1 page

under the custody of this office.

IN WITNESS WHEREOF, I have hereunto set my hand, and caused the seal of this office to be affixed, on the day and year first above written.

By direction of the Secretary of the Treasury:

*Edwina Gray*

for George Kerr
Manager, Transfer & Certification Unit
Kansas City Service Center

Form 2866 (Rev 12-88)

**1258**

JOHN G KITSOS 326 STAFFORD WAY 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 1040
 BOLINGBROOK,IL 60439-2128

| Date | Explanation of Trans. | Assessment | Credit | Balance | DLN or Acct# | 23cDate | Period |
|------|----------------------|-----------|--------|---------|--------------|---------|--------|
| 5-15-81 | Return Filed | .00 | | | 09211-129-08610-1 | | 7812 |
| 5-02-88 | Audit Deficiency | .00 | | | 09247-498-79008-8 | | |
| 3-28-88 | Audit Deficiency | 1,964.00 | | | 09251-072-17225-8 | 03-28-88 | |
| | Delinquency Penalty | 491.00 | | | | | |
| | Estimated Tax Penalty | 62.76 | | | | | |
| | Negligence penalty | 98.20 | | | | | |
| | Restricted Interest | 3,442.78 | | | | | |
| 8-01-88 | Restricted Interest | 129.30 | | 6,188.04 | 09254-561-15044-8 | 08-01-88 | |
| 3-28-88 | First Notice | | | | | | |

certify that the foregoing transcript of the taxpayer named above inrespect to the taxes specified is a true and complete tran-
cript for the period stated, and all assessment,penalties, interest,abatements, credits, refunds and advance or unidentified payment
elating thereto as disclosed by the records of this office as of the date of this certification are shown therein,

signature of Manager, Transfer & Certification Unit Location: Internal Revenue Service Center
required for certification) Midwest Region, Kansas City, MO

*Edwina Gray* Date: **OCT 2 0 1989**

 page: 1

EXHIBIT 3

14. The Universal Bible Church of Bolingbrook paid nothing for the real property.(Universal Bible Church, hereinafter the "church") (J. Kitsos dep. p. 106)

15. In 1978, John Kitsos owed tax liabilities in an amount of no less than $26,631, plus statutory additions. (see Exhibits D and E)

16. After conveying his interest in the 326 Stafford Way property to the "church", John Kitsos had no other assets out of which he might satisfy his tax liabilities. (J. Kitsos dep. p. 76).

17. On the lower level of the Stafford Way property, the family room and dining room are filled with the accoutrement one might expect to find in any suburban home. (J.Kitsos dep. pp. 27,66)

18. The upper level of the Stafford Way property has four rooms. One is inhabited by John and Alice Kitsos, one by their daughter, one by their son, the fourth is a guest room. (J.Kitsos dep. p. 28)

19. The mailbox fixed to a pole by the driveway at the Stafford Way property bears the name "J. Kitsos". (J.Kitsos dep. p. 28) (see Exhibit F)

20. Defendant John Kitsos also uses 326 Stafford Way as his business address. He runs his television repair service out of the garage at 326 Stafford Way. (J.Kitsos dep. p. 28)

21. Defendants John and Alice Kitsos are the beneficiaries listed on their homeowners' insurance policy that covers the real property located at 326 Stafford Way. (J.Kitsos dep. p. 30)

**1260**

22. When John and Alice Kitsos "conveyed" their real property interest at 326 Stafford Way house to the "church" they understood that there were no limitations placed on how long they would reside there. (J.Kitsos dep. pp. 106-108)

23. John Kitsos pays the gas, water, electric, phone and mortgage bills associated with the real property located at 326 Stafford Way. (J. Kitsos dep. pp. 67,68)

24. John Kitsos paints the house and cuts the lawn for the property located at 326 Stafford Way when those tasks need to be done. (J. Kitsos dep pp. 69,78)

25. Defendant John Kitsos is uncertain as to exactly who the members of his "church" may be or when it may meet.1/ (J.Kitsos pp. 53, 91, 96-98)

26. Moreover, the "church", acting through John Kitsos, has indicated that its only members are Defendants John Kitsos and his wife, Alice Kitsos. (See Response of Universal Bible Church and Supporting Memorandum)

FRED FOREMAN
United States Attorney

SCOTT W. HARRIS
Trial Attorney, Tax Division
U.S. Department of Justice
P.O. Box 55
Ben Franklin Station
Washington, D.C. 20044
Telephone: (202) 307-6460
 (FTS) 367-6460

---

1/ Mr. Kitsos promised to send the government a list of the names of the members of his "church" within two days of his deposition on January 18, 1991. (J.Kitsos dep. p. 98) As of March 11, 1991, the United States has received no such list.

## SUPPLEMENT TO MEMORANDUM OPINION AND ORDER

Just after the issuance of this Court's June 4, 1991 Memorandum Opinion and Order (the "Opinion,") this Court received and reviewed the current advance sheet of West's Illinois Decisions (155 Ill.Dec. No. 4, bearing a May 29, 1991 date). That advance sheet reported a recent Illinois decision that held the January 1, 1990 enactment by the Illinois General Assembly of the Uniform Fraudulent Conveyance Act would be given retroactive effect, at least for purposes of permitting injunctive relief against pre-enactment fraudulent transfers. Although the question whether that statute would operate retrospectively or prospectively as to the conveyance at issue in *this* case proves to be entirely irrelevant to the result reached in the Opinion, this Court believes that in the interest of total accuracy the Opinion should be modified to reflect the current Illinois case law.

Accordingly Opinion at 1235 n. 13 is amended to read as follows:

In all other respects the Opinion remains unchanged. ·